```
                    IN THE UNITED STATES DISTRICT COURT

                   IN AND FOR THE DISTRICT OF DELAWARE

                                  - - -

GLAXO GROUP LIMITED,
                                     :    CIVIL ACTION
            Plaintiff,               :
                                     :
       v.                            :
                                     :
TEVA PHARMACEUTICALS USA, INC.       :
and TEVA PHARMACEUTICALS             :
INDUSTRIES LIMITED,                  :
                                     :    NO. 04-171 (KAJ)
            Defendants.
                                  - - -

                         Wilmington, Delaware
                  Thursday, June 30, 2005 at 11:30 a.m.
                         TELEPHONE CONFERENCE


                                  - - -

BEFORE:    HONORABLE KENT A. JORDAN, U.S.D.C.J.

                                  - - -

APPEARANCES:


       CONNOLLY BOVE LODGE & HUTZ, LLP
       BY:  FRANCIS DiGIOVANNI, ESQ.

            -and-

       MORGAN LEWIS & BOCKIUS, LLP
       BY:  BRIAN P. MURPHY, ESQ.,
            JASON LIEF, ESQ., and
            THOMAS J. PUPPA, ESQ.
            (New York, New York)

                 Counsel for Glaxo Group Limited



                                        Brian P. Gaffigan
                                        Official Court Reporter
```

1       Mr. Schuman.

2       MR. SCHUMAN: Yes.

3       THE COURT: In the letter I got from your
4  corresponding counsel, it's reiterated that you are not
5  contesting any other claim limitation in this case. That's
6  the single point at issue. Have I misread you?

7       MR. SCHUMAN: You have not, Your Honor. And I
8  think maybe I can cut this to the chase, too. Our client is
9  interested in doing this quickly and cheaply and I have a
10 stipulation I'm prepared to read on the record if this will
11 help anything. And I think it might actually do it.

12      THE COURT: Go ahead.

13      MR. SCHUMAN: Here it is. Teva admits that the
14 ranitidine oral solution described in ANDA 76-937 contains
15 all the elements of Claims 1 through 11 of U.S. Patent No.
16 5,068,249 except the following:

17         (1), "a stabilizing effective amount of ethanol"
18 in Claims 1 through 10;

19         (2), "2.5 percent to 10 percent weight/volume
20 ethanol" in claim 2;

21         (3), "7 percent to 8 percent weight/volume
22 ethanol" in Claims 3, 11 and 12.

23      THE COURT: All right. Does that do it for you,
24 Mr. Murphy?

25      MR. MURPHY: That's does it, Your Honor.

1  people and e-mails and we told them to please go talk to
2  those people so we can get it.  We don't have it.
3           THE COURT:  Okay.  I think I got your position.
4           Mr. Schuman.
5           MR. SCHUMAN:  Yes, I think there are a few
6  things to be added to this.  First of all, the first
7  deposition that Glaxo took in this case is one of the people
8  from Novopharm who we brought down to Philadelphia for
9  deposition.  His name was Tamas Szederkenyi.  And I may get
10 this wrong.  S-z-e-d-e-r-k-e-n-y-i.  He has been involved in
11 the project since the late 90s and what he testified to is
12 that there were two divisions separated -- one was in Quebec
13 and one was I think in Toronto, but they were separated by
14 distance, two divisions of Novopharm that worked on this.
15 And the bulk of the work was done in a division, I believe
16 it was in Quebec.
17          Regardless of where it was located, that
18 division has been or was acquired by another company in
19 Canada and has been not part of Novopharm for many years.
20 We have been trying to get documents.  We have very
21 sketching documents frankly in Canada and in the United
22 States for Teva.
23          THE COURT:  Well, let me stop you because the
24 tenor of your remarks leads me to conclude that you are not
25 disagreeing with the plaintiff that these documents are

relevant to issues in the case. Do I understand that correctly?

MR. SCHUMAN: Yes, and we've already produced a lot of these ethanol tests that they've been able to read and then ask for additional documents. For instance, there are 15 formulations that we have given them that were these precursor formulations but we can't get the base documents. We've been trying to do that.

THE COURT: Well, tell me why you can't get them.

MR. SCHUMAN: Well, first of all, we don't have the documents in-house. We have been looking for the documents in-house in locations. We've done the electronic sweep. We've done that all. We've looked in Teva.

Now, the one anomaly I will say is the preformulation memo. It comes up, it looks like it should be around but we can't find a copy of it and we're still looking for it. But the other ones, it doesn't surprise me because most of that work was done for a division that was sold off and is now a separate company.

THE COURT: Has there been any effort to acquire those documents from the sister company by either you or by Glaxo that you are aware of, Mr. Schuman?

MR. SCHUMAN: I asked that we start doing that when this dispute came to a head this week, so prior to this

1  week, no. But we're starting to do that now. But I don't
2  believe Glaxo has tried to do that either.
3          MR. MURPHY: Your Honor, that is because until
4  this very moment, I had no knowledge or information that
5  there was any entity other than Teva that had control of
6  these documents. This is the very first time it's ever been
7  mentioned to me.
8          THE COURT: Okay. This is another example of
9  Heisenberg's Uncertainty Principle in operation. The
10 lawyers' behavior changes under observation. So you guys
11 need to talk to each other, please.
12         It seems pretty clear that this is not at least
13 at this juncture is not a legal dispute, this is a dispute
14 about whether good faith efforts have and are continuing to
15 take place to obtain concededly relevant documents, and you
16 folks need to get on the seem page and talk to each other
17 about how to make that happen. And I expect just exactly
18 that, discussion and good faith efforts to make stuff
19 happen. So there is really nothing for me to rule on right
20 now and I'm not going to rule on it except to tell you what
21 I have just said; okay?
22         MR. SCHUMAN: Yes, Your Honor.
23         THE COURT: Last but not least is the so-called
24 nonparty evidence which the folks at Teva tell me was never
25 surfaced before the letter that Glaxo sent to me and they

1  assert that this is not ripe, and I guess I'll give you a
2  shot, Mr. Murphy to tell me why you think I ought to be
3  addressing this now.
4              MR. MURPHY:  Yes, Your Honor.  Two comments.  We
5  did produce the documents, all the documents we intend to
6  rely on in the last two weeks but I also take from their
7  letter that I guess is in accordance with kind of your
8  instruction to us to start talking to each other, they'd
9  like us to give them specific designations of testimony
10 and give them three weeks to object and then see what the
11 issues are, and that makes sense to me.
12             THE COURT:  Okay.
13             MR. MURPHY:  I'm happy to proceed that way.
14             THE COURT:  Good.  Then we're done.  You guys
15 see what you can work out.  And if you can't work it out,
16 you know how to get ahold of me and we'll get it hammered
17 out.
18             Okay.  I think that takes care of the issues we
19 had teed up for today.  But Mr. Murphy, I'll ask you first,
20 is there anything else we need to address while we're all on
21 the line together?
22             MR. MURPHY:  No, judge.  Only to note that
23 we're running short on time to resolve these issues.  And so
24 we will try.  We would ask for cooperation to do this as
25 quickly as possible so we don't run into the discovery

1  cutoff date.

2          THE COURT: I'm sure you are going to get it;
3  right, Mr. Schuman?

4          MR. SCHUMAN: Yes. We're motivated to move
5  fast, Your Honor.

6          THE COURT: All right. Mr. Schuman, is there
7  anything else from your side of the table that needs to be
8  address while we're all together?

9          MR. SCHUMAN: Not that I'm aware of, Your Honor.

10         THE COURT: All right. Thanks for your time
11 this morning. Good-bye.

12         (The attorneys respond, "Thank you, Your
13 Honor.")

14         (Telephone conference ends at 11:50 a.m.)

15

16

17

18

19

20

21

22

23

24

25