IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

David R. LONG

Serial No.: 07/344,620

Filed: April 28, 1989

For: PHARMACEUTICAL COMPOSITIONS

Group Art Unit: 125

Examiner: Friedman

AMENDMENT

Honorable Commissioner of
  Patents and Trademarks
Washington, D.C.  20231

Sir:

    This is in response to the Official Action of June 28,
1989 in connection with the above-identified application.  The
period for response to the Official Action has been extended
to expire on October 28, 1989 by the filing herewith of a
Petition for a one-month extension of time and payment of the
required fee.

    Please amend the above-identified application as follows:

IN THE CLAIMS

    Please amend claim 1 as follows:

    1.    (Amended)  A pharmaceutical composition which is an
aqueous formulation for oral administration of ranitidine
and/or one or more physiologically acceptable salts thereof,
said formulation also containing a stabilizing effective
amount of ethanol and said composition having a pH in the
range of 6.5 to 7.5.

**G 000139**

Please cancel claim 4 without prejudice or disclaimer.

## REMARKS

Applicant has amended the claims as in the parent application in order to more particularly define the invention. The same 112 rejection was dropped in the parent application in view of these amendments.

More particularly, claims 1 and 4 have been combined and the amount of ethanol present has been functionally defined. Claim 4 has been cancelled from the application. The claims remaining in the application are Claims 1-3 and 5-10. Applicant most respectfully submits that all the claims now present in the application are in full compliance with 35 USC 112 and are clearly patentable over the references of record.

The rejection of Claims 1-10 under 35 USC 112 second paragraph as being indefinite has been carefully considered. The expression "also containing ethanol" has been modified to specify that the amount of ethanol contained in the composition is a stabilizing amount of ethanol and this amendment is fully supported by applicant's specification, at page 2, lines 4 and 5.

In addition, the pH range from Claim 4 has been included in Claim 1. Applicant most respectfully submits that there is no requirement that the method of obtaining the pH be set forth in the claims. This would be fully appreciated by one of ordinary skill in the art. In fact, the desired pH can be simply achieved by adding an appropriate amount of a

- 2 -

G 000140

physiologically acceptable acid or base to the solution, depending on whether the solution is prepared from ranitidine free base or an acid addition salt thereof.  It is not necessary to use buffer salts to obtain the desired pH, although it may often be more convenient to do so. Accordingly, it can be seen that the means for adjusting pH are entirely conventional and therefore, it is most respectfully requested that this aspect of the rejection under 35 USC 112 be withdrawn.  As far as Claim 7 is concerned, having inserted the pH range in Claim 1, the amount of buffer salts is thereby predetermined, depending on the specific buffer salts that are used.

The rejections of Claims 1-14 under 35 USC 103 as being unpatentable over Chemical Abstract has been carefully considered.  In the Official Action it is urged that the art teaches the cojoining of ranitidine and an alcohol; e.g., ethanol.  The addition of a non-critical pH limitation and non-critical amounts are not seen as patentable limitations to the various claims.  This rejection having been carefully considered is most respectfully traversed.

At the outset, applicant specifically traverses the statement in the Official Action that the references relied upon by the Examiner teach the cojoining of ranitidine and an alcohol, e.g., ethanol.  Applicant most respectfully submits that the art does not teach the cojoining of ranitidine and an alcohol in a pharmaceutical composition which is an aqueous formulation for oral administration.  These references do not lead one of ordinary skill in the art any way to expect that

- 3 -

G 000141

the stability of ranitidine in an aqueous oral formulation could be enhanced by the presence of ethanol and does not suggest the presence of ethanol in such compositions.

The first Chemical Abstract reference (97 61014G) relates to the Glaxo patent for a new polymorphic form of ranitidine hydrochloride (designated form 2) and includes a description of processes for its production. Applicant most respectfully submits that all that one of ordinary skill in the art can infer from this reference is that ranitidine hydrochloride must be reasonably stable in ethanol since ethanol is used as a solvent for recrystallization. However, there is no teaching whatever that the stability of ranitidine or its salts as an aqueous formulation for oral administration is enhanced by the presence of ethanol and no suggestion that ethanol should be included in pharmaceutical formulations containing ranitidine as presently claimed.

The second Chemical Abstract reference (104 102280z) relates to a paper in a Scandinavian journal indicating the presence of ethanol in a person's diet did not adversely effect the gastric acid secretion inhibiting properties of ranitidine. Again, there is absolutely no teaching in this reference that would lead one of ordinary skill in the art to expect that ethanol would enhance the stability of ranitidine in aqueous oral formulations or would suggest to one of ordinary skill in the art that ethanol should be added to such formulations.

In summary, the prior art relied upon in the rejection is in fact, extremely far removed from the present claimed

- 4 -

G 000142

invention and no way renders it obvious.  Accordingly, it is most respectfully requested that this rejection be withdrawn.

Applicant wishes to reiterate that the stability of a pharmaceutical formulation for oral administration is the most important factor and enhancing the stability of the active ingredient of such formulations is always an objective.  Thus, in the development of any pharmaceutical formulation, it is necessary to ensure that the drug substance is stable within the formulation and this is necessary for two main reasons. Firstly, the drug substance must be stable in order to ensure that the patient is receiving the correct dosage of the drug. Secondly, it is important to ensure that the patient is not receiving significant amounts of breakdown products arising from the degradation of the drug substance in the formulation. This second point is particularly important since it is not always possible to identify fully all of the breakdown products that may occur.  Consequently, the chronic toxicity of all of the various compounds arising from the breakdown of the drug substance cannot be determined.

In practice, degradation of the drug substance within a formulation usually occurs upon storage and is often dependent upon a number of factors including temperature and time of storage.  Any improvement that can be made in enhancing the stability of the drug substance can only benefit the patient since it ensures more accurate dosage and the intake of less breakdown products.  In addition, enhancement of the stability of the drug substances also benefit from the economic point of view in that it increases the effective shelf life of the

- 5 -

G 000143

product. There is not the remotest suggestion of this in the prior art of record.

Applicant would like to make of record an additional reference which has only recently come to the attention of applicant when the corresponding German specification was cited in connection with the corresponding application is Austria. This is UK Patent Application No. 2,120,938A. This specification relates to the combination of anti-ulcer drugs such as ranitidine together with salicylic acid or a salt thereof and optionally a non-steroidal anti-inflammatory. Page 7, lines 20-29 of this document refers to the formulations for parenteral administration and states that these may be formulated in water or organic solvents including a reference to lower aliphatic alcohols, optionally in admixture with water. However, there is absolutely no teaching which would lead one of ordinary skill in the art to select ethanol in combination with ranitidine in the expectation of providing an oral formulation which is stabilized by the presence of ethanol. Thus, this reference neither alone or in combination with any other reference anticipates or renders obvious the presently claimed invention.

In view of the above comments and amendments to the claims, favorable reconsideration and allowance of all of the

- 6 -

G 000144

claims now present in the application are most respectfully

requested.

Respectfully submitted,

Richard E. Fichter
Registration No. 26,382

BACON & THOMAS
625 Slaters Lane - Fourth Floor
Alexandria, Virginia  22314
(703) 683-0500

Date:  October 30, 1989

- 7 -

G 000145

*fact*

Sheet 1 of 1

| FORM PTO-1449 (Rev. 2-32) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. REF/Long/620 | SERIAL NO. 4948.1 07/344,620 |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | | APPLICANT David R. LONG | |
| | | FILING DATE 4/28/89 | GROUP 125 |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| ✓ | 2120938A | 5/83 | United Kingdom | | | | |
| | | | | | | | |
| | | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| | |
| | |
| | |

| EXAMINER | DATE CONSIDERED 11/11/89 |
|---|---|

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

G 000146

# UK Patent Application (19) GB (11) 2 120 938 A

SCIENCE REFERENCE LIBRARY

(21) Application No 8313269
(22) Date of filing 13 May 1983
(30) Priority data
(31) 1535
1536
(32) 14 May 1982
14 May 1982
(33) Hungary (HU) .
(43) Application published
14 Dec 1983
(51) INT CL$^3$
A61K 31/19 31/33
(52) Domestic classification
A5B 170 180 190 296 29Y
327 380 381 38Y 392 401
40Y 420 421 42Y 441 444
446 44Y 451 452 453 45Y
480 481 482 483 485 48Y
501 503 50Y 511 51Y 523
52Y 540 541 542 54Y 550
551 552 55Y 565 566 56Y
575 576 57Y 586 58Y 606
60Y 616 61Y 650 653 65Y
660 664 66Y J
(56) Documents cited
None
(59) Field of search
A5B
(71) Applicants
Richter Gedeon
Vegyeszeti Gyar Rt,
(Hungary),
Gyomroi ut 19/21,
Budapest X,
Hungary.
(72) Inventors
Elemer Ezer,
Laszlo Szporny,
Judit Matuz,
Gyorgy Hajos,
Mariann Skvorecz,
Katalin Pallagi,
Eva Palosi,
Eszter Cholnoky,
Gyozo Hortobagyi.
(74) Agent and or Address for
Service
Frank B. Dehn and Co.,
Imperial House,
15-19 Kingsway,
London WC2B 6UZ.

(54) Anti-ulcer pharmaceutical compositions containing salicylic acid or its salts

(57) The invention relates to new anti-ulcer and anti-ulcer/antiinflammatory compositions and products, which contain an anti-ulcer agent or a salt thereof and salicylic acid or an alkali metal salt thereof optionally together with a non-steroidal antiinflammatory agent. As an anti-ulcer agent preferably cimetidine or ranitidine is employed, while the preferred non-steroidal antiinflammatory agent is indomethacin.

GB 2 120 938 A

The drawings originally filed were informal and the print here reproduced is taken from a later filed formal copy.
This print takes account of replacement documents later filed to enable the application to comply with the formal requirements of the Patents Rules 1932.

G 000147



2120938

1/1

Fig. 1

INDOMETHACIN-INDUCED ( 10MG/KG P.O.) INTESTINAL ULCERATION GRADUALLY
DECREASES THE TENSILE STRENGTH (T.S.) OF INTESTINAL WALL

1                                                                    GB 2 120 938 A    1

SPECIFICATION

Anti-ulcer pharmaceutical compositions

5   The invention relates to new anti-ulcer pharmaceutical compositions and a process for their preparation.
    More particularly, the invention concerns new pharmaceutical compositions containing two or more active
    ingredients which compositions are effective against gastrointestinal ulceration and, if desired, may also
    contain anti-inflammatory agents.
        Since the $H_2$-receptor antagonists were first described, [Nature 236, 385 (1962)] this novel group of
10  anti-ulcer agents has been subjected to extensive experimental and clinical investigations. Shortly
    afterwards, cimetidine (N''-cyano-N'-methly-N-[2-(((5-methyl-1H-imidazolyl-4)-yl)-methyl-thio)-ethyl]-
    guanidine) appeared on the market and has been favourably received. In the past few years numerous new
    $H_2$-receptor antagonists have been prepared and investigated.
        During the last few years, since the world-wide introduction of cimetidine, more than 1500 articles have
15  been published concerning this agent. In experiments on rats it has been demonstrated for example by P.
    Del Soldato et al [Br. J. Pharmac. 67, 33 (1979)] that cimetidine cannot prevent indomethacin-induced
    intestinal ulceration. Similar observations have recently been published by W.S. Mitchell et al [Brit. Med. J.
    284, 731 (1982)] following human clinical practice. It has been reported that the concurrent administration of
    cimetidine and indomethacin has resulted in perforated ulcers in the case of several patients.
20      It is well known that gastrointestinal ulcers, a typical disease peculiar to civilized communities, are
    occurring in more and more people. Among ulcerous patients there are numerous people suffering also
    from inflammatory or degenerative locomotor diseases. In such cases the medical attendant has to face a
    hitherto practically insoluble situation since until now no pharmaceutical composition was known in the art
    which could effectively be used under these conditions without serious side-effects. It is highly probable that
25  the concurrent administration of an anti-ulcer agent and a non-steroidal antiinflammatory agent may
    accelerate the perforation of the ulcer.
        It would thus be desirable to be able to provide a pharmaceutical composition which is devoid of these
    disadvantages and in which the activity of the anti-ulcer active ingredient is favourably increased, i.e.
    potentiated.
30      It is known that a common, undesired side-effect of non-steroidal antiinflammatory agents is their
    ulcerogenic effect. According to numerous publications 1-(p-chlorobenzoyl)-5-methoxy-2-methylindole-3-yl-
    acetic acid (indomethacin), 4-butyl-1,2-diphenylpyrazolidine-3,5-dione (phenylbutazone), d-2-(6-methoxy-2-
    naphthyl)-propionic acid (naproxen), 3-(3-trifluoromethylanilino)-nicotinic acid (niflumic acid) and acetyl
    salicylic acid show an ulcerogenic side-effect. There are several methods by which the above undesired
35  side-effect of antiinflammatory substances can be reduced. Our own experiments have showed that some
    reduction of side-effects can be achieved using certain salicylates (British Patent Specification 1,483,165) but
    there is no suggestion in the literature to combine these agents as anti-ulcer active ingredients; on the
    contrary, it is generally pointed out that the salicylates have an undesirable effect on the gastrointestinal
    condition (see for example: Aspirin and Related Drugs: Their Actions and Uses, K.D. Rainsford, K. Brune,
40  M.W. Whitehouse, Birkhäuser Verlag, Basel und Stuttgart 1977). Though different pharmacological
    investigations, recently carried out, have demonstrated unambiguously that sodium salicyate has a
    gastrointestinal cytoprotective effect (e.g. J. Pharm. Pharmac. 28, 655 1976); Prostaglandins 21, Suppl. 139
    (1981)], it has also been reported that the gastrointestinal cytoprotective effect of sodium salicylate has no
    connection with gastric acid secretion (Adv. Physiol. Sci., Vol. 29, Gastrointestinal Defense Mechanisms,
45  Pergamon Press - Akadémiai Kiadó, Budapest, Hungary, 1981).
        We have found that in a concurrent administration of various antiinflammatory agents, particularly
    indomethacin, and cimetidine, the latter compound in a certain concentration range does not inhibit the
    intestinal ulcerogenic effect of the antiinflammatory agents, instead it facilitates this undesired action.
    Accordingly, it could not be expected that the administration of a certain dose of salicylic acid or a salicylate
50  as a further component would almost entirely suppress the undesired side-effect.
        The present invention is based on the surprising discovery that a combination of known anti-ulcer agents
    with sodium salicylate has a more significant, i.e. synergistic, anti-ulcer effect than the anti-ulcer agent alone.
    We have further found that when a non-steroidal antiinflammatory agent is added to such a combination, the
    undesired side-effects of the non-steroidal antiinflammatory agent can also be avoided.
55      According to one feature of the invention there are provided compositions comprising, as active
    ingredient, 1 part by weight of an anti-ulcer agent or a salt thereof and 0.1 to 10 parts by weight of salicylic
    acid or an alkali metal salt thereof. In one particular embodiment the active ingredient further includes 0.01
    to 1 part by weight of a non-steroidal antiinflammatory agent or a salt thereof. If desired, the compositions
    may also contain carriers and/or other additives such as are conveniently used in the pharmaceutical
60  industry.
        According to a preferred embodiment of the invention there are provided compositions wherein the
    anti-ulcer agent comprises cimetidine, ranitidine (N-[2-(((5-(dimethylamino)-methyl-2-furanyl)-methyl)-thio)-
    ethyl]-N'-methyl-2-nitro-1,1-ethylenediamine), propantheline (N,N-diisopropyl-N-methyl-2-(xanthene-9-
    carbonyloxy)-ethylammonium hydroxide), gastrixone (xanthene-9-carboxylic acid tropinester methyl hyd-
65  rochloride) or zolimidine (2-(p-methylsulfonylphenyl)-imidazo[1,2-a]-pyridine).

G 000149

2      GB 2 120 938 A      2

According to a further preferred embodiment of the invention the pharmaceutical compositions contain, as a non-steroidal antiinflammatory agent, indomethacin, naproxen, phenylbutazone, acetylsalicilic acid or niflumic acid.

A preferred composition according to the invention may for example contain 0.1 to 1 part by weight of
5  sodium salicylate, 1 part by weight of cimetidine and optionally 0.01 to 1 part by weight of indomethacin. Also preferred are compositions of 0.01 to 1 part by weight of sodium salicylate and 1 part by weight of cimetidine. The above compositions may additionally contain one or more conventional carriers and/or other additives.

In the compositions according to the invention the total active ingredient concentration preferably
10  constitutes from 10 to 90% by weight of the total weight of the composition, the remainder consisting of carriers and/or other additives.

The invention further relates to a process for the preparation of these pharmaceutical compositions, which comprises mixing 0.1 to 10 parts by weight of salicylic acid or an alkali metal salt thereof and a second container weight of an anti-ulcer agent or a salt thereof, optionally together with 0.01 to 1 part by weight of a
15  non-steroidal antiinflammatory agent and/or with carriers and/or with other additives.

According to a preferred embodiment of the process 1 part by weight of cimetidine is mixed with 0.1 to 1 part by weight of sodium salicylate optionally together with one or more conventional carriers and/or additives; or 0.1 to 1 part by weight of sodium salicylate and 0.1 to 1 part by weight of indomethacin are mixed with 1 part by weight of cimetidine optionally together with one or more conventional carriers and/or
20  other additives; or 1 part by weight of ranitidine is mixed with 0.1 to 10 parts by weight of sodium salicylate optionally together with one or more conventional carriers and/or other additives.

According to a further aspect of the present invention there is provided a pharmaceutical product comprising a first container containing salicylic acid or an alkali metal salt thereof in association with written or printed directions to administer
25  the contents of the first and second containers concurrently in an amount of 0.1 to 10 parts by weight of salicylic acid or salt thereof to 1 part by weight of anti-ulcer agent or salt thereof. If desired the product may further include a non-steroidal antiinflammatory agent such as described hereinabove in which case the directions will further indicate that the non-steroidal antiinflammatory agent be administered concurrently with the contents of the first and second containers in an amount of 0.01 to 1 part by weight of non-steroidal
30  antiinflammatory agent to 1 part by weight of anti-ulcer agent or salt thereof. The anti-ulcer agent or salt thereof and the salicylic acid or alkali metal salt thereof, together with, if present, the antiinflammatory agent and/or any carriers and/or other additives, may either be admixed prior to administration or alternatively they may be administered to the patient immediately concurrently e.g. as tablets taken one after the other.

35  EXPERIMENTAL METHODS

1) *Indomethacin-induced intestinal ulceration*

Non-fasted Hannover-Wistar rats, each weighing 120-150 g., were given a 15 mg./kg. dose of indomethacin in a Tween 80 suspension to induce fatal intestinal ulceration. The test material was administered immediately after the indomethacin treatment, also orally.
40  To evaluate the development of small intestinal ulcers, the tensile strength of the intestinal wall was determined by the so-called inflation technique [J. Pharm. Pharmac. 27, 867 (1975)], because the erosion caused by ulcerogenesis leads to a weakening of the strength of the intestinal wall. The animals were killed 48 and 72 hours, respectively, after the indomethacin treatment by ether narcosis. The small intestine from pylorus to caecum was carefully removed and one end was ligated, while the other end was connected to a
45  W+W electronic BP Recorder 8005 (Ugo Basile, Italy) through a polyethylene tube. The entire small intestine was placed into a physiological saline solution at 37°C and the pressure increased until air bubbles appeared at the weakened sites in the intestinal wall. This pressure, expressed in mmHg, is defined as the tensile strength (T.S.). Parallel with the progress of the indomethacin-induced intestinal ulceration the tensile strength of the intestinal wall, also called intestinal wall resistancy, gradually decreases as illustrated in
50  Figure 1 of the accompanying drawings.

2) *Abs. alcohol-induced gastric necrosis*

Gastric necrosis was induced by acidic-alcohol, by the modified method of Robert et al. [Gastroenterology 77, 433 (1979)]. Female Hannover-Wistar rats, each weighing 120-150 g., were fasted for 24 hours. Water was
55  allowed *ad libitum*.

Compounds to be tested were administered orally 30 minutes prior to acidic-alcohol administration. Acidic-alcohol (cc. HCl:abs.ethanol = 1:50 v/v) was administered orally through a canula in a dose of 0.5 ml. pro 100 g. of body weight. Two hours later the animals were killed by ether overdose. Stomachs were removed and opened along the major curvature. The lesions induced by ethanol are located at the corpus of
60  the stomach as multiple linear hemorrhagic bands of necrotic tissue. Lengths of the lesions were measured and expressed in mm.-s and the total length of lesions of each stomach was calculated. Degree of lesion severity was expressed as the mean of total lesion-length per stomach. The stomach cytoprotection was expressed in comparison with the control animals.



GB 2 120 938 A    3

3) *Gastric acid secretion in Shay-rats*

The tests were carried out according to the method of Shay et al. [Gastroenterology **5**, 43-46 (1945)]. Female Wistar rats, each weighing 120-150 g., were used. Pyrolic ligation was performed under ether anaesthesia after twenty-four hours' fasting. The animals were treated by the compounds to be tested intraperitoneally, immediately after the surgical intervention. The oral treatments were performed 30 minutes prior to operation. The animals were killed 4 hours after pyrolic ligation. After extension of the stomach the volume of gastric juice was measured and HCl concentration was determined by titration against 0.01 N NaOh in the presence of phenolphtalein as indicator. The amount of acid was expressed in μmoles per 100 g. of body weight. The statistical evaluation of the results was performed by Student's test.

*Evaluation of the experimental results*

By the above experiments the optimal cimetidine/sodium salicylate ratio, by which the indomethacin-induced intestinal ulceration (10 mg./kg.) and the gastric-acid secretion on Shay-rats could be inhibited was determined.

### TABLE 1

*Inhibition of Indomethacin-induced intestinal ulceration after concurrent administration of combinations of Cimetidine-Sodium-Salicylate in different ratios*

| Treatment | n | Dose mg./kg. p.o. | Tensile strength of s.intestine, 48 hours after treat. in mmHg | Resistance of intestinal wall in percent of untreated value |
|---|---|---|---|---|
| Untreated | 30 | - | 231 ± 4 | 100 |
| Indomethacin(Ind.) | 26 | 10 | 111 ± 10 | 48** |
| Cimetidine (Cim.) | 9 | 100 | 227 ± 1 | 98 |
| Ind. + Cim. | 10 | 10+100 | 63 ± 11 | 27** |
| Ind.+Cim.+Na−Salicylate | 10 | 10+/100+10/ | 157 ± 28 | 68* |
| Ind.+Cim.+Na−Salicylate | 10 | 10+/100+25/ | 158 ± 19 | 68* |
| Ind.+Cim.+Na−Salicylate | 10 | 10+/100+50/ | 213 ± 7 | 94* |

$^x p < 0.01$ compared with Ind.+Cim. group
$^{xx} p < 0.01$ compared with untreated group

### TABLE 2

*Inhibition of gastric acid secretion by cimetidine and various combinations of cimetidine with Na-Salicylate on Shay-rats*

| Treatment | n | Dose mg./kg. | HCl 4 hours μmoles/100 g. bwt. ± S.E.M. | Inhibition of HCl-production in percent |
|---|---|---|---|---|
| Control | 10 | - | 457 ± 55 | |
| Cimetidine (Cimet.) | 10 | 50 | 163 ± 41 | 65* |
| Cimet. − Na-Salicylate | 10 | 50 + 10 | 172 ± 32 | 63* |
| Cimet. + Na-Salicylate | 10 | 50 + 25 | 40 ± 28 | 93** |
| Cimet. + Na-Salicylate | 10 | 50 + 50 | 150 ± 42 | 68* |

$^x p < 0.01$ compared with the control
$^{xx} p < 0.01$ compared with the cimetidine 50 mg./kg. group

G 000151

4     GB 2 120 938 A                                                                                          4

## TABLE 3

*In an abs.alcohol-induced gastric necrosis test Na-Salicylate is cytoprotective even in combination with cimetidine*

| Treatment | n | Dose mg./kg. p.o. | Cytoprotection in % of the combination | Remarks |
|---|---|---|---|---|
| Na-Salicylate | 10 | 4 | 35 | $ED_{50} = 7.9$ |
| Na-Salicylate | 10 | 8 | 60ˣ | $EE_{50}$ by A. Robert 15 mg./kg. |
| Na-Salicylate | 10 | 16 | 58ˣ | Prostaglandins Suppl. 21. 1981. |
| Na-Salicylate | 10 | 16 | 94ˣ | p. 139-146 |
| Cimetidine (Cim.) | 10 | | | |
| Cim. + Na-Salicylate | 10 | 8 + 4 | 5 | $ED_{50} = 30$ |
| Cim. + Na-Salicylate | 10 | 16 + 8 | 41ᴬˣ | this contains: |
| Cim. + Na-Salicylate | 10 | 32 + 16 | 82ˣ | 10 mg. of sodium-salicylate |
| Cim. + Na-Salicylate | 10 | 64 + 32 | 93ˣ | |

According to the literature cimetidine is not protective in this test (Hagel et al.: Gastroenterology, 82.No.5. Suppl. 2. 1078, 1982; Soldato P.Del: Boll. Chim. Farm. 120, No.11, 631-638. 1981)

ˣ$_p$ < 0.01

## TABLE 4

*Intestinal ulceration after repeated treatment (on three consecutive days) with Indomethacin, Cimetidine and combination of Cimetidine and Na-Salicylate (2:1)*

| Treatment | n | Dose mg./kg. p.o. | Tensile strength of s.intestine, 24 hours after last treat. in mmHg | Mortality in percent | Resistance of intestinal wall in per-cent of un-treated value |
|---|---|---|---|---|---|
| Untreated (normal) | 30 | - | 231 ± 4 | - | 100 |
| Indomethacin (Ind.) | 10 | 3 × 10 | 20 ± 10 | 30 | 9 |
| Cimetidine (Cim.) | 10 | 3 × 100 | 186 ± 16 | 0 | 80 |
| Ind. + Cim. | 10 | 3 × (10 + 100) | 9 ± 15 | 50 | 4 |
| Ind. + Cim. + Na-Salicylate 2:1 | 10 | 3 × (10 + 100 + 50) | 225 ± 6 | 0 | 97ˣ |

ˣ$_p$ < 0.01 compared with Ind. group

## TABLE 5

*Inhibition of gastric acid secretion in pylorus-ligated rats by Cimetidine and combination of Cimetidine and Na-Salicylate (2:1) treatment*

| Treatment | n | Dose mg./kg. i.p. | HCl output 4 hours μmol/100 g. bwt. | Inhibition of HCl output % | Remark |
|---|---|---|---|---|---|
| Control | 40 | - | 425 ± 23 | - | |
| Sodium-Salicylate | 5 | 25 | 420 ± 47 | 0 | |
| Sodium-Salicylate | 5 | 50 | 381 ± 75 | 11 | |
| Cimetidine | 10 | 15 | 378 ± 55 | 12 | |
| Cimetidine | 10 | 25 | 327 ± 50 | 33 | $ED_{50} = 54.4$ |
| Cimetidine | 10 | 50 | 259 ± 62 | 39 | |
| Cimetidine | 5 | 100 | 140 ± 38 | 67 | |

5

GB 2 120 938 A    5

## TABLE 6

*Inhibition of gastric acid secretion in Shay-rats by treatment with a 2:1 combination of Cimetidine and Na-Salicylate*

| Treatment | n | Dose mg./kg. i.p. | HCl output/4 hours μmol/100 g. bwt ± S.E.M. | HCl output inhibition in % | Remark |
|---|---|---|---|---|---|
| Control | 9 | - | 435 ± 36 | | |
| Cim. + Na-Salicylate | 10 | 6 + 3 | 316 ± 45 | 28 | |
| Cim. + Na-Salicylate | 10 | 12 + 6 | 374 ± 40 | 14 | |
| Cim. + Na-Salicylate | 10 | 24 + 12 | 256 ± 36 | 48$^x$ | $ED_{50}$ = 35.6, which contains: |
| Cim. + Na-Salicylate | 20 | 50 + 25 | 156 ± 18 | 64$^x$ | Cim. = 23.8 mg. Na-Salicylate = |
| Cim. + Na-Salicylate | 5 | 64 + 32 | 0 | 100 | = 11.8 mg. |

$x_p < 0.01$ compared with the control

## TABLE 7

*Inhibition of Indomethacin-induced fatal intestinal ulceration after concurrent administration of various anti-ulcer compounds*

| Treatment | n | Dose mg./kg. p.o. | Tensile strength of s.intestine, 72 hours after treat. in mmHg | Resistance of intestinal wall in % of un-treated value | Mortality in percent |
|---|---|---|---|---|---|
| Untreated | 30 | - | 231 ± 4 | 100 | - |
| Indomethacin (Ind.) | 26 | 15 | 66 ± 13 | 28$^x$ | 20 |
| Ind. + Propantheline | 10 | 15+20 | 48 ± 10 | 21$^x$ | 20 |
| Ind. + Gastrixon | 10 | 15+20 | 57 ± 15 | 25$^x$ | 10 |
| Ind. + Zolimidine | 10 | 15+100 | 45 ± 15 | 19$^x$ | |
| Ind. + Cimetidine | 9 | 15+150 | 47 ± 10 | 20$^x$ | 10 |
| Ind. + Ranitidine | 10 | 15+50 | 100 ± 20 | 43$^x$ | |

$x_p < 0.01$ compared with untreated group

## TABLE 8

*Inhibition of Indomethacin-induced ulceration after concurrent administration of Ranitidine and Sodium-Salicylate*

| Treatment | n | Dose mg./kg. p.o. | Tensile strength of s.intestine, 48 hours after treat. in mmHg |
|---|---|---|---|
| Untreated | 30 | - | 231 ± 5 |
| Ranitidine (Ran.) | 9 | 25 | 225 ± 8 |
| Indomethacin (Ind.) | 26 | 10 | 111 ± 10 |
| Ind. + Ran. | 9 | 10 + 25 | 145 ± 18 |
| Ind. + Ran. + Na-Salicylate | 10 | 10 + 25 + 100 | 219 ± 5$^x$ |

$x_p < 0.01$ compared with Ind. group

G 000153

GB 2 120 938 A    6

### TABLE 9

Inhibition of intestinal ulceration induced by a 15 mg.kg. p.o. dose of indomethacin by concurrent administration of sodium-salicylate and various anti-ulcer agents

| Treatment | n | Dose mg./kg p.o. | Tensile strength of s.intestine, 72 hours after treat., in mmHg | Resistance of intestinal wall in % of untreated value | Mortality in percent |
|---|---|---|---|---|---|
| untreated (normal) | 30 | - | 231 ± 5 | 100 | - |
| Indomethacin (Ind.) | 26 | 15 | 66 ± 10ˣ | 28ˣ | - |
| Ind.+Propantheline (Prop.) | 10 | 15+20 | 48 ± 10ˣ | 21ˣ | 20 |
| Ind.+(Prop.+Na-Salic.) | 10 | 15+(20+100) | 211 ± 6ˣˣ | 91ˣˣ | 20 |
| Ind.+Gastrixon (Gas.) | 10 | 15+20 | 57 ± 15ˣ | 25ˣ | - |
| Ind.+(Gas.+Na-Salic.) | 10 | 15+(20+100) | 211 ± 4ˣˣ | 96ˣˣ | 10 |
| Ind.+Zolimidine (Zol.) | 10 | 15+100 | 45 ± 13ˣ | 19ˣ | - |
| Ind.+(Zol.+Na-Salic.) | 10 | 15+(100+100) | 207 ± 11ˣˣ | 89ˣˣ | - |

$x_p$  0.01 compared with the untreated group
$xx_p$  0.01 compared with indomethacin

The data set forth in Tables 1 - 2 show that the optimal ratio between cimetidine and sodium salicylate was 2:1.

In Figure 1 the time course of the intestinal ulceration induced by a 10 mg.kg. dose of indomethacin is illustrated.

Table 3 shows that a 2:1 combination of cimetidine and Na-Salicylate has a dose-dependent cytoprotective effect against abs.alcohol-induced stomach necrosis while cimetidine is not cytoprotective.

As set forth in Table 4 the intestinal toxicity of indomethacin was markedly apparent after repeated treatment on three consecutive days (3×10 mg./kg. p.o.) and the mortality was found to be 30 percent on the fourth day. Concurrent administration of 3×100 mg./kg. cimetidine p.o. resulted in a greater intestinal toxicity (mortality 50 %). Concurrent administration of 3×(100÷50) mg./kg. of cimetidine and Na-Salicylate (2:1) p.o. results in an absolute blockade of intestinal toxicity.

One of the most important factors, the gastric acid secretion has been investigated in detail by using Shay-rats. The results are summarized in Tables 5 and 6. Both cimetidine and the combination of cimetidine and Na-Salicylate (2:1) have dose dependent inhibitory effect on the gastric acid secretion. The $ED_{50}$ values for cimetidine and the combination of cimetidine and Na-Salicylate (2:1) were 54.4 mg./kg. i.p. and 35.6 mg./kg. i.p., respectively. The 35.6 mg. of the combination of cimetidine and Na-Salicylate (2:1) contained 23.8 mg. of cimetidine and 11.8 mg. of sodium salicylate. In combination a dose of cimetidine 56% less than that of cimetidine alone produced the same (50%) gastric acid secretion. Sodium salicylate alone was actually ineffective as a gastric acid inhibitor. The results were similar in case of intraperitoneal and oral treatment, respectively. The results show that a synergism exists between cimetidine and salicylate, as to the inhibition of gastric acid secretion.

From Table 7 it appears that the concurrent administration of the tested anti-ulcer compounds cannot block the indomethacin-induced fatal intestinal ulceration.

According to the data in Table 8 a combination of ranitidine with sodium salicylate (25÷100 mg.·kg.) results in a total inhibition of intestinal ulceration induced by a 15 mg./kg. p.o. dose of indomethacin.

The results with combinations of various further anti-ulcer compounds and of sodium salicylate are shown in Table 9. It can be seen that while the anti-ulcer compounds listed in Table 7 alone are ineffective, in a combination with the cytoprotective sodium salicylate they can effectively block the intestinal ulceration induced with indomethacin.

According to a preferred embodiment of the invention a combination of 200 mg. cimetidine and 100 mg. sodium salicylate is used in one tablet. Instead of sodium salicylate salicylic acid or lithium salicylate can equally be used.

The pharmaceutical compositions according to the invention can be administered orally, rectally and/or parenterally, in a single daily dose or in several smaller doses. For oral administration the compositions are generally formulated as tablets, preferably coated tablets, dragées or capsules. The oral formulations according to the invention generally do not contain any excipient but, if desired, excipients like lactose or starch can also be employed. As a binding material for example gelatine, sodium carboxymethyl cellulose, methyl cellulose, polyvinylpyrrolidone or starch gum can be used. As a disintegrating agent preferably potato starch or microcrystalline cellulose are added into the compositions but ultraamylopectin or formaldehyde caseine, etc. can also be employed. As a lubricant and anti-adhesive talc, colloidal silicic acid, stearine, calcium or magnesium stearate, etc. can be used.

Such tablets may be prepared by the conventional techniques of the pharmaceutical industry, e.g. by

G 000154

granulation and subsequent pressing. Thus the mixture of active ingredients and fillers and optionally a part of the disintegrating substances may be granulated with an aqueous, alcoholic or aqueous-alcoholic solution of the binding agents in a suitable apparatus and the granules obtained dried. The dry granulate may then be mixed with the further additives, e.g. disintegrating, anti-adhesive agents and lubricants, and
5   the mixture pressed into tablets. If desired, to facilitate administration the tablets are grooved. The tablets                                       5
can be coated with a gastric acid resistant film, e.g. shellac, cellulose acetate phthalate or Eudragit-L using an alcoholic, preferably isopropanolic solution of the film-forming materials. The tablets can be prepared from a mixture of the active ingredients and additives directly by pressing, and the tablets obtained can be coated with an intestino-solvent film layer.

10      Degées can be prepared by using various protecting, flavouring agents and pigments conventionally used                           10
in the preparation of pharmaceuticals, e.g. sugar, cellulose derivatives (methyl or ethyl cellulose, carboxymethyl cellulose sodium, etc.), polyvinylpyrrolidone, calcium phosphate, calcium carbonate, food-pigments, food-colour shellacs, iron oxide pigments, aroma substances, etc.
        Capsules can for example be prepared by filling a mixture of the active ingredients and additives into a
15  hard gelatine capsule.                                                                                                                15
        For rectal administration suppositories may be prepared. As a carrier vegetable fats, e.g. hardened vegetable oils or triglycerides of fatty acids having 12 to 17 carbon atoms, preferably Witepsol are employed. The active ingredients are preferably homogeneously distributed in the melted mass of the carriers and suppositories are prepared therefrom by moulding.
20      For parenteral administration injectable preparations are prepared. The active ingredients may be                               20
dissolved in water or organic solvents, optionally in the presence of mediators, e.g. polyoxyethylene sorbitan monolaurate, monooleate or monostearate (Tween-20, Tween-60 and Tween-80, respectively,). As an organic solvent for example lower aliphatic alcohols or glycol ethers, preferably ethyleneglycol monoethyl ether, can be employed, optionally in admixture with water. The injectable solutions may contain
25  also various auxiliary agents, such as preservatives, e.g. benzyl alcohol, p-hydroxybenzoic acid methyl                            25
and/or propyl ester, phenylmercuriborate or benzalconium chloride, or antioxidants, such as sodium pyrosulfate, ascorbic acid, tocopherol and optionally complexing agents to bind trace metals, e.g. ethylenediamine tetraacetic acid, and pH-adjusting and buffer materials, and optionally local anaesthetics, e.g. lidocaine.
30      The injectable solutions according to the invention are preferably filtered prior to filling into ampoules and                  30
are then subjected to sterilization.
        The invention will further be illustrated by the following specific Examples which are for illustration only and not limitation of our invention.

35  *Example 1*                                                                                                                          35

*Cimetidine-sodium salicylate tablets*

    cimetidine                                                                                    200 mg.
40  sodium salicylate                                                                             100 mg.   40
    magnesium stearate                                                                              3 mg.
    polyvinylpyrrolidone                                                                            8 mg.
    talc                                                                                           12 mg.
    potato starch                                                                                  27 mg.
45                                                                                                          45
        From the materials listed above 350 mg. tablets are prepared by wet granulation and moulding. Essentially the same activity is obtained if in the above composition sodium salicylate is replaced by an equivalent amount of another alkali metal salicylate, e.g. lithium salicylate.

50  *Examples 2 to 16*                                                                                     50
        In the following Examples 2-16, tablets are prepared as in Example 1 except the active components and ingredients are present in the amounts specified below. The manufacturing procedure is the same as in Example 1. is the same as in Example 1.

55  *Example 2*                                                                                          55

    ranitidine                                                                                     50 mg.
    sodium salicylate                                                                             100 mg.
    potato starch                                                                                   8 mg.
60  magnesium stearate                                                                              1 mg.   60
    polyvinylpyrrolidone                                                                            3 mg.
    talc                                                                                            3 mg.

G 000155

8     GB 2 120 938 A                                          8

*Example 3*

| | |
|---|---|
| propantheline | 15 mg. |
| sodium salicylate | 75 mg. |
| magnesium stearate | 2 mg. |
| potato starch | 8 mg. |
| polyvinylpyrrolidone | 2.5 mg. |
| talc | 2.5 mg. |

*Example 4*

| | |
|---|---|
| gastrixone | 2 mg. |
| sodium salicylate | 25 mg. |
| magnesium stearate | 1 mg. |
| potato starch | 1 mg. |
| polyvinylpyrrolidone | 0.5 mg. |
| talc | 0.5 mg. |

*Example 5*

| | |
|---|---|
| zolimidine | 200 mg. |
| sodium salicylate | 100 mg. |
| magnesium stearate | 3 mg. |
| polyvinylpyrrolidone | 8 mg. |
| talc | 12 mg. |
| potato starch | 27 mg. |

*Example 6*

| | |
|---|---|
| cimetidine | 200 mg. |
| sodium salicylate | 100 mg. |
| indomethacin | 20 mg. |
| magnesium stearate | 3 mg. |
| polyvinylpyrrolidone | 8 mg. |
| talc | 12 mg. |
| potato starch | 27 mg. |

*Example 7*

| | |
|---|---|
| cimetidine | 200 mg. |
| sodium salicylate | 100 mg. |
| naproxen | 200 mg. |
| magnesium stearate | 5 mg. |
| polyvinylpyrrolidone | 3 mg. |
| potato starch | 37 mg. |
| talc | 15 mg. |

*Example 8*

| | |
|---|---|
| cimetidine | 200 mg. |
| sodium salicylate | 100 mg. |
| phenylbutazone | 100 mg. |
| potato starch | 40 mg. |
| talc | 12 mg. |
| polyvinylpyrrolidone | 12 mg. |
| magnesium stearate | 4 mg. |

G 000156

GB 2 120 938 A    9

*Example 9*

| | |
|---|---|
| cimetidine | 200 mg. |
| sodium salicylate | 100 mg. |
| 5 aspirin | 200 mg.   5 |
| potato starch | 40 mg. |
| talc | 20 mg. |
| polyvinylpyrrolidone | 15 mg. |
| magnesium stearate | 5 mg. |
| | 10 |

10

*Example 10*

| | |
|---|---|
| cimetidine | 200 mg. |
| sodium salicylate | 100 mg. |
| 15 niflumic acid | 200 mg.   15 |
| potato starch | 40 mg. |
| talc | 20 mg. |
| polyvinylpyrrolidone | 15 mg. |
| magnesium stearate | 5 mg. |
| | 20 |

*Example 11*

| | |
|---|---|
| ranitidine | 50 mg. |
| sodium salicylate | 100 mg. |
| 25 indomethacin | 20 mg.   25 |
| potato starch | 15 mg. |
| polyvinylpyrrolidone | 6 mg. |
| talc | 6 mg. |
| magnesium stearate | 3 mg. |
| | 30 |

30

*Example 12*

| | |
|---|---|
| ranitidine | 50 mg. |
| sodium salicylate | 100 mg. |
| 35 naproxen | 150 mg.   35 |
| potato starch | 25 mg. |
| talc | 10 mg. |
| polyvinylpyrrolidone | 10 mg. |
| magnesium stearate | 5 mg. |
| | 40 |

40

*Example 13*

| | |
|---|---|
| ranitidine | 50 mg. |
| sodium salicylate | 100 mg. |
| 45 phenylbutazone | 100 mg.   45 |
| potato starch | 14 mg. |
| talc | 6 mg. |
| polyvinylpyrrolidone | 8 mg. |
| magnesium | 2 mg. |
| | 50 |

50

*Example 14*

| | |
|---|---|
| ranitidine | 50 mg. |
| sodium salicylate | 100 mg. |
| 55 aspirin | 200 mg.   55 |
| potato starch | 30 mg. |
| talc | 10 mg. |
| polyvinylpyrrolidone | 8 mg. |
| magnesium stearate | 2 mg. |

G 000157

GB 2 120 938 A     10

### Example 15

| | |
|---|---|
| ranitidine | 50 mg. |
| sodium salicylate | 100 mg. |
| niflumic acid | 200 mg. |
| potato starch | 30 mg. |
| talc | 10 mg. |
| polyvinylpyrrolidone | 8 mg. |
| magnesium stearate | 2 mg. |

### Example 16

| | |
|---|---|
| propantheline | 15 mg. |
| sodium salicylate | 150 mg. |
| indomethacin | 20 mg. |
| potato starch | 15 mg. |
| talc | 5 mg. |
| polyvinylpryrrolidone | 4 mg. |
| magnesium stearate | 1 mg. |

## CLAIMS

1. Pharmaceutical compositions comprising, as active ingredient, 1 part by weight of an anti-ulcer agent or a salt thereof and 0.1 to 10 parts by weight of salicylic acid or an alkali metal salt thereof.

2. Compositions as claimed in claim 1 further including, as an active ingredient, 0.01 to 1 part by weight of a non-steroidal antiinflammatory agent.

3. A composition as claimed in claim 2 wherein the non-steroidal antiinflammatory agent comprises indomethacin, naproxen, phenylbutazone, acetyl-salicylic acid or niflumic acid.

4. Compositions as claimed in any preceding claim wherein the anti-ulcer agent comprises cimetidine, ranitidine, propantheline, gastrixone or zolimidine.

5. Pharmaceutical compositions comprising 0.1 to 1 part by weight of sodium salicylate and 1 part by weight of cimetidine in combination with one or more carriers and/or other additives.

6. Pharmaceutical compositions comprising 0.1 to 1 parts by weight of sodium salicylate, 0.01 to 1 part by weight of indomethacin and 1 part by weight of cimetidine, in combination with one or more carriers and/or other additives.

7. Pharmaceutical compositions comprising 0.1 to 10 parts by weight of sodium salicylate and 1 part by weight of rantidine, in combination with one or more carriers and/or other additives.

8. Compositions as claimed in any preceding claim in which the total active ingredient concentration constitutes from 10 to 90% by weight of the total weight of the composition, the remainder consisting of one or more carriers and/or other additives.

9. Pharmaceutical compositions as claimed in claim 1 or claim 2 substantially as herein described.

10. Pharmaceutical compositions substantially as herein described in any one of Examples 1 to 16.

11. A process for the preparation of a pharmaceutical composition which comprises mixing 0.1 to 10 parts by weight of salicylic acid or an alkali metal salt thereof with 1 part by weight of an anti-ulcer agent or a salt thereof optionally together with 0.01 to 1 part by weight of a non-steroidal antiinflammatory agent and/or with one or more carriers and/or other additives.

12. A process as claimed in claim 11 wherein the anti-ulcer agent is cimetidine, ranitidine, propantheline, gastrixone or zolimidine and the optional non-steroidal antiinflammatory agent is indomethacin, naproxen, phenylbutazone, acetyl-salicylic acid or niflumic acid or a salt thereof.

13. A process as claimed in claim 12 wherein 0.1 to 1 part by weight of sodium salicylate is mixed with 1 part by weight of cimetidine.

14. A process as claimed in claim 12 wherein 0.1 to 1 part by weight of sodium salicylate is mixed with 0.01 to 1 part by weight of indomethacin and 1 part by weight of cimetidine.

15. A process as claimed in claim 12 wherein 0.1 to 10 parts by weight of sodium salicylate are mixed with 1 part by weight of ranitidine.

16. A process as claimed in claim 11 substantially as herein described.

17. A process as claimed in claim 11 substantially as herein described in any one of Examples 1 to 16.

18. Pharamaceutical compositions whenever prepared by a process as claimed in any one of claims 11 to 17.

19. A pharmaceutical product comprising a first container containing salicylic acid or an alkali metal salt thereof and a second container containing an anti-ulcer agent or a salt thereof in association with written or printed directions to administer the contents of the first and second containers concurrently in an amount of 0.01 to 10 parts by weight of salicylic acid or salt thereof to 1 part by weight of anti-ulcer agent or salt thereof.

G 000158

20.   A product as claimed in claim 19 further including a non-steroidal antiinflammatory agent and wherein the directions indicate that the non-steroidal antiinflammatory agent be administered concurrently with the contents of the first and second containers in an amount of 0.01 to 1 part by weight of non-steroidal antiinflammatory agent to 1 part by weight of anti-ulcer agent or salt thereof.

5   21.   Each and every novel method, process, composition and product herein disclosed.   5

Printed for Her Majesty's Stationery Office, by Croydon Printing Company Limited, Croydon, Surrey, 1983.
Published by The Patent Office, 25 Southampton Buildings, London, WC2A 1AY, from which copies may be obtained.

G 000159



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

07/544,628—04/28/89    LUHE                                    C    REF/RA107

RICHARD E. FICHTER
BACON & THOMAS
625 SLATERS LANE, FOURTH FLOOR
ALEXANDRIA, VA  22314                              FRIEDMAN,S

                                                    425        6

                                                    11/14/89

☑ This application has been examined    ☑ Responsive to communication filed on 10/30/89    ☑ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), ___0___ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.    35 U.S.C. 133

**Part I**    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.          2. ☐ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449.              4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II**    SUMMARY OF ACTION

1. ☑ Claims ___1-3 + 5-14___ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims ___all___ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____ . Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

                                        44

PTOL-326 (Rev. 6-88)                    **EXAMINER'S ACTION**

G 000160

CASE 1:04-cv-00171-GMS   Document 107-6   Filed 06/30/2006   Page 23 of 38

Serial No. 07/344620                                    -2-

Art Unit 125

     Claims 1-3 and 5-10 remain rejected under the 2nd paragraph for the reasons of record. The presence of "also" (claim 1) leaves open the question what other ingredients might be intended.

     Claims 1-3 and 5-10 remain rejected under 35 USC 112, 1st paragraph for the reasons of record. The claims are silent as to the amount of ranitidine present. It is 10 grams, 5 mg., an effective amount or what? We don't know. Page 3 states an amount. The claims are broader than this.

     All claims remain rejected under 35 USC 103 for the reasons clearly of record. Chem. Abst. 104 clearly shows ranitidine administered in the presence of ETOH and obviously the mixture is aqueous. Chem. Abst. 97- shows ranitidine with an alcohol (2-propanol). This art clearly precludes applicants claims to ranitidine and ETOH. (A) 104- teaches the ingredients together in the presence of each other. (B) 97- does show an alcohol and ranitidine in a formulation. As for the allegation of enhanced stability, it has not been demonstrated for the compositions urged as contrasted with any of other pH parameters.

     THIS ACTION IS MADE FINAL. Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely first response to a final rejection has been discontinued by the Office. See 1021 TMOG 35.

Serial No. 07/344620                                        -3-

Art Unit 125


A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS
FINAL ACTION IS SET TO EXPIRE THREE (3) MONTHS FROM THE
DATE OF THIS ACTION.  IN THE EVENT A FIRST RESPONSE IS
FILED WITHIN TWO (2) MONTHS OF THE MAILING DATE OF THIS
FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL
AFTER THE END OF THE THREE (3) MONTH SHORTENED STATUTORY
PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY
EXTENSION FEE PURSUANT TO 37 CFR 1.136(a) WILL BE
CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION.
IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE
EXPIRE LATER THAN SIX (6) MONTHS FROM THE DATE OF THIS
FINAL ACTION.


FRIEDMAN:cwh

A/C 703

557-3920

11-13-89                                  ...ney J. Fried...
                                          ·rimary Examiner
                                          ·· Art Unit ··

G 000162

#620 115

60 115

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application Serial No.: 07/344,620

Applicant:   David R. LONG

Filing Date:   April 28, 1989

For: PHARMACEUTICAL COMPOSITIONS

Group Art Unit:   125   #7

Examiner:   Friedman   3/27/40

PETITION FOR EXTENSION OF TIME

Honorable Commissioner of Patents
   and Trademarks
Washington, DC  20231

Sir:

Applicant requests that the time for taking action in this case be
extended pursuant to 37 CFR 1.136 (a) for:

[x] one month          [ ] three months
[ ] two months         [ ] four months

The fee set in 37 CFR 1.17 for the extension of time is
$   62   .

[x] Fee enclosed.  Please charge any additional fee required for this
extension of time to Deposit Account No. 02-0200      . A
duplicate copy of this paper is enclosed.

[ ] Charge fee to Deposit Account No. _____ . A
duplicate copy of this paper is enclosed.

[ ] Applicant is a small entity entitled to pay reduced fees in this
application.  A verified small entity statement:

[ ] has been filed          [ ] is enclosed

Also enclosed is a:

[ ] Response          [ ] Notice of Appeal          [ ] Appeal Brief

[x] Rule 1.62 File Wrapper Continuation Application w/$370

Respectfully submitted,

BACON & THOMAS
625 Slaters Lane - Fourth Floor
Alexandria, Virginia  22314
(703) 683-0500

Richard E. Fichter
Registration No. 26,382

March 14, 1990

140  03/16/90  07344620

1 115          62.00 CK

G 000163



$4 3700

101
07/494904 A

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

REQUEST FOR FILING FILE WRAPPER CONTINUATION
APPLICATION UNDER 37 C.F.R. 1.62

Honorable Commissioner of
 Patents and Trademarks
Box FWC
Washington, D.C. 20231

Sir:

    This is a request for filing a FILE WRAPPER CONTINUATION
under 37 C.F.R. 1.62 of pending prior application:

SERIAL NO.: 07/344,620        GROUP ART UNIT:   125

FILED:    April 28, 1989      EXAMINER:   Friedman

INVENTOR: LONG

TITLE:   PHARMACEUTICAL COMPOSITIONS

by the following inventors:

| Full Name of Inventor: | David Richard Long |
| Residence: | 41, Echo Hill |
| City: | Royston, Hertfordshire |
| State or Country: | ENGLAND |

| Full Name of Inventor: | |
| Residence: | |
| City: | |
| State or Country: | |

| Full Name of Inventor: | |
| Residence: | |
| City: | |
| State or Country: | |

G 000164

-2-

---

Full Name of Inventor:

        Residence:

        City:

    State or Country:

---

    The above-identified prior application in which no payment of the issue fee, abandonment of, or termination of proceedings has occurred, is hereby expressly abandoned as of the filing date of this new application.  Please use all the contents of the prior application file wrapper, including the drawings, as the basic papers for the new application.

_____     A preliminary amendment is enclosed.

\_\_X\_\_     The filing fee is calculated as shown below:

| ITEM AS FILED* | | NO. EXTRA | | SMALL ENTITY | FULL FEE |
|---|---|---|---|---|---|
| Basic Fee | | | | $185 | $370 |
| Total Claims | 13-20= | 0 | x$ 6= | x$12= | 0 |
| Indep Claims | 2- 3= | 0 | x$18= | x$36= | 0 |
| | | TOTAL | | $ | $ 370 |

    *Note: All calculations are based on condition of claims after any Preliminary Amendment made pursuant to this communication

\_\_X\_\_     A check in the amount of $ \_\_370\_\_\_ is enclosed.

\_\_X\_\_     The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 C.F.R. 1.16, except claim fees under 1.16(b), (c) or (d) associated with this communication, or credit any overpayment to Deposit Account No. 02-0200.  A duplicate copy of this sheet is enclosed.

_____     Applicant is a small entity and is entitled to pay reduced fees in this application.  A verified small entity statement was filed in _____ on _____

\_\_X\_\_     Amend the specification by inserting before the first line the sentence: This application is a CONTINUATION of application Serial No. 07/344,620, filed April 28, 1989, now abandoned, which is a continuation of serial no. 07/131,442, filed December 11, 1987, now abandoned.

\_\_X\_\_     Priority is claimed under 35 U.S.C. § 119 of application(s):

Serial No. 86 29781_____, filed 12 Dec. 1986 in \_\_United Kingdom\_\_
Serial No. _____, filed _____ in _____

G 000165

-3-

___X___   The certified copy has been filed in prior
application Serial No. _07/131,442_   filed_Dec. 11, 1987_.

___X___   The prior application is assigned of record to

_____GLAXO GROUP LIMITED_____

___X___   Also enclosed  _Petition for one month extension of time w/$62_
_____

___X___   The power of attorney appears in the original papers
in the prior application, and the power of attorney in the
prior application includes:
Richard E. Fichter, Reg. No. _26,382_ of Bacon & Thomas

     It is understood that secrecy under 35 U.S.C. 122 is
hereby waived to the extent that if information or access is
available to any one of the applications in the file wrapper
of a 37 C.F.R. 1.62 application, be it either this
application or a prior application in the same file wrapper,
the Patent and Trademark Office may provide similar
information or access to all the other applications in the
same file wrapper.

___X___   Address all future communications to:

          Richard E. Fichter
          BACON & THOMAS
          625 Slaters Lane, Fourth Floor
          Alexandria, Virginia  22314

                         Respectfully submitted,

                         Richard E. Fichter
                         Registration No. 26,382
                         Attorney of Record

BACON & THOMAS
625 Slaters Lane
Fourth Floor
Alexandria, VA  22314
(703) 683-0500

Date:   March 14, 1990

G 000166

FORM PTO-875

**U.S. DEPARTMENT OF COMMERCE**
PATENT AND TRADEMARK OFFICE

**PATENT APPLICATION FEE DETERMINATION RECORD**

SERIAL NO. 494504  FILING DATE 03/14/90

APPLICANT: *Long, David R.*

## CLAIMS AS FILED - PART I

| FOR | NO FILED | NO EXTRA | | SMALL ENTITY RATE | FEE | OR | OTHER THAN A SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | | 185 | OR | | 370 |
| TOTAL CLAIMS | 13 | | | x 6 | | OR | 12 | |
| INDEP CLAIMS | 2 | | | x18 | | OR | 36 | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | | 60 | | OR | 120 | |
| | | | | TOTAL | | OR | TOTAL | 370 |

## CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (1) CLAIMS REMAINING AFTER AMENDMENT | (2) HIGHEST NO PREVIOUSLY PAID FOR | (3) PRESENT EXTRA | SMALL ENTITY RATE | ADDIT FEE | OR | OTHER THAN A SMALL ENTITY RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|
| TOTAL | 12 | 20 | — | x 6 | | OR | x 12 | — |
| INDEP | 2 | 3 | — | x 18 | | OR | x 36 | — |
| FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | 60 | | OR | 120 | |
| | | | | TOTAL ADDIT FEE | | OR | TOTAL | |

**AMENDMENT B**

| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT FEE | OR | RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|
| TOTAL | | | | x 6 | | OR | x 12 | |
| INDEP | | | | x 18 | | OR | x 36 | |
| FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | 60 | | OR | 120 | |
| | | | | TOTAL ADDIT FEE | | OR | TOTAL | |

**AMENDMENT C**

| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT FEE | OR | RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|
| TOTAL | | | | x 6 | | OR | x 12 | |
| INDEP | | | | x 18 | | OR | x 18 | |
| FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | 60 | | OR | 60 | |
| | | | | TOTAL ADDIT FEE | | OR | TOTAL | |

51

PALM III APPLICATION FILE DATA CODING SHEET    U S DEPARTMENT OF COMMERCE PATENT & TM OFFICE

FORMAT NO 2   Serial No.   TYPE APPL   07491804   2

FORMAT NO 3   FILING DATE   0 2 / 4 / 9 0

ATTORNEY DOCKET NUMBER

SPECIAL HANDLING

GROUP ART UNIT   1 2 1 5

CLASS   5 1 4

SHEETS OF DRAWINGS   0 1 0

INDEPENDENT CLAIMS

TOTAL CLAIMS   1 3

SMALL ENTITY

ASG?   0 2

PREPARED BY   CRN

DATE   2 / 21 / 00

SECURITY FOREIGN (CASH / LICENSE)?   N Y

FORMAT NO 4   Applicant's Name & Address

FORMAT NO 5   Title of Invention

FORMAT NO 6N / 7   (corresponding)

STATUS CODE   3

**FORMAT NO. 8 — CONTINUITY CODE / PARENT APPLICATION SERIAL NUMBER / PARENT FILING DATE**

| | CONTINUITY CODE | | PARENT APPLICATION SERIAL NUMBER | | | | | | | PARENT FILING DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORD 8 0 1 | 0 2 | | 0 | 7 | 3 | 4 | 4 | 6 | 3 | 0 | 0 | 4 | 2 | 8 | 8 | 9 | |
| RECORD 8 0 2 | 0 2 | | 0 | 7 | 1 | 3 | 1 | 4 | 4 | 2 | 1 | 2 | 1 | 1 | 8 | 2 | |
| RECORD 8 0 3 | | | 0 | | | | | | | | | | | | | | |
| RECORD 8 0 4 | | | 0 | | | | | | | | | | | | | | |
| RECORD 8 0 5 | | | 0 | | | | | | | | | | | | | | |
| RECORD 8 0 6 | | | 0 | | | | | | | | | | | | | | |
| RECORD 8 0 7 | | | 0 | | | | | | | | | | | | | | |
| RECORD 8 0 8 | | | 0 | | | | | | | | | | | | | | |
| RECORD 8 0 9 | | | 0 | | | | | | | | | | | | | | |
| RECORD 8 1 0 | | | 0 | | | | | | | | | | | | | | |

☐ MORE ON SUPPLEMENTAL CODING SHEET

**FORMAT NO 9 — COUNTRY CODE / PCT / FOREIGN APPLICATION SERIAL NUMBER / FILING DATE**

| | COUNTRY CODE | | PCT / FOREIGN APPLICATION SERIAL NUMBER | | | | | | | | | | FILING DATE | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORD 9 0 1 | G B X | | 8 | 6 | 2 | 9 | 7 | 8 | 1 | | | | 1 | 2 | 1 | 2 | 8 | 6 |
| RECORD 9 0 2 | | | | | | | | | | | | | | | | | | |
| RECORD 9 0 3 | | | | | | | | | | | | | | | | | | |
| RECORD 9 0 4 | | | | | | | | | | | | | | | | | | |
| RECORD 9 0 5 | | | | | | | | | | | | | | | | | | |
| RECORD 9 0 6 | | | | | | | | | | | | | | | | | | |
| RECORD 9 0 7 | | | | | | | | | | | | | | | | | | |
| RECORD 9 0 8 | | | | | | | | | | | | | | | | | | |
| RECORD 9 0 9 | | | | | | | | | | | | | | | | | | |
| RECORD 9 1 0 | | | | | | | | | | | | | | | | | | |

FOREIGN PRIORITY CLAIMED?   ☑ YES   ☐ NO

☐ APPLICATION PAPERS

☐ MORE ON SUPPLEMENTAL CODING SHEET

G 000168

*32*

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | LONGEST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

RICHARD E. FICHTER
BACON & THOMAS
625 SLATERS LANE
FOURTH FLOOR
ALEXANDRIA, VA 22314

| EXAMINER |
|---|
| FRIEDMAN, S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 125 | 9 |

DATE MAILED:
05/04/90

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined  ☐ Responsive to communication filed on _____  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), __ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.   4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☑ Claims __1-3 + 5-4__ are pending in the application.
   Of the above, claims _____ are withdrawn from consideration.
2. ☐ Claims _____ have been cancelled.
3. ☐ Claims _____ are allowed.
4. ☑ Claims __all__ are rejected.
5. ☐ Claims _____ are objected to.
6. ☐ Claims _____ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).
12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____
13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

*53*

**EXAMINER'S ACTION**

OL-326 (Rev.5-89)

G 000169

Serial No. 07/494804                                    -2-

Art Unit 125

Claims 1-3 and 5-10 are rejected under 35 U.S.C.
112, second paragraph, as being indefinite for failing
to particularly point out and distinctly claim the
subject matter which applicant regards as the invention.

"Also containing ethanol (claim 1) is indefinite as
to what else is included.  The claims should state how
the pH is arrived at.

Claims 1-3 and 5-12 are rejected under 35 U.S.C.
112, first paragraph, as the disclosure is enabling only
for claims limited in accord with the entire disclosure.
See MPEP 706.03(n) and 706.03(z).

All claims should recite amounts for all
ingredients.

The following is a quotation of 35 U.S.C. 103 which
forms the basis for all obviousness rejections set forth
in this Office action:

A patent may not be obtained though the invention
is not identically disclosed or described as set
forth in section 102 of this title, if the
differences between the subject matter sought to be
patented and the prior art are such that the
subject matter as a whole would have been obvious
at the time the invention was made to a person
having ordinary skill in the art to which said
subject matter pertains.  Patentability shall not
be negatived by the manner in which the invention
was made.

Subject matter developed by another person, which
qualifies as prior art only under subsection (f)
and (g) of section 102 of this title, shall not
preclude patentability under this section where the
subject matter and the claimed invention were, at
the time the invention was made, owned by the same
person or subject to an obligation of assignment to
the same person.

54

G 000170

Serial No. 07/494804                        -3-

Art Unit 125


All claims are rejected under 35 U.S.C. 103 as
being unpatentable over Chem. Absts. all.

The art teaches the cojoined use of use of
ranitidine and an alcohol (ethanol). The claims also
teach ranitidine and ethanol. The various parameters of
the claims; i.e. pH and amounts are considered as
choices to one skilled in the art. Such parameters have
not been demonstrated as being critical and as such are
considered to be within the skill of the art.

All of the claims are rejected over the claims of
Serial No. 131,422 on the grounds of double patenting
(35 USC 101). No second invention is seen to residue in
the instant claims.

Any inquiry concerning this communication or
earlier communications from the examiner should be
directed to Examiner Friedman whose telephone number is
(703) 557-9592.


Any inquiry of a general nature, or relating to the
status of this application, should be directed to the
Group receptionist whose telephone number is (703)
557-3920.

04/30/90;dal

Stanley J. Friedman
Primary Examiner
Group Art Unit 125

55

G 000171

*430.66-117*    *122-542/125*
                *Status 041*

                                                    *#10*
                                                    *JRL*
                                                    *11/21/90*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application Serial No.: 07/494,804

Applicant:      David R. LONG                    Group Art Unit:    125

Filing Date:      03/14/90                        Examiner:    FRIEDMAN

For:    PHARMACEUTICAL COMPOSITIONS

### PETITION FOR EXTENSION OF TIME

Honorable Commissioner of Patents
        and Trademarks
Washington, DC 20231

Sir:

        Applicant requests that the time for taking action in this case be
extended pursuant to 37 CFR L136 (a) for:

☐ one month                    ☒ three months
☐ two months                   ☐ four months

        The fee set in 37 CFR L17 for the extension of time is
$ 430.00 .

☒ Fee enclosed. Please charge any additional fee required for this
    extension of time to Deposit Account No.  02-0200  . A
    duplicate copy of this paper is enclosed.

☐ Charge fee to Deposit Account No. _____ . A
    duplicate copy of this paper is enclosed.

☐ Applicant is a small entity entitled to pay reduced fees in this
    application. A verified small entity statement:

        ☐ has been filed              ☐ is enclosed

Also enclosed is a:

☐ Response          ☐ Notice of Appeal          ☐ Appeal Brief

☐ _____

                                        Respectfully submitted,

                                        *Richard E. Fichter*

                                        Richard E. Fichter
                                        Reg. No. 26,382

BACON & THOMAS
625 Slaters Lane - Fourth Floor
Alexandria, Virginia 22314
(703) 683-0500
REF/er

Date:    October 31, 1990

120 LA 11/13/90 07494804                    1 117    430.00 CK

*54*

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re application of:            :

LONG                        )         Examiner:  Friedman, S.
                              :
Serial No. 07/494,804         )         Group Art Unit:  125
                              :
Filed:  March 14, 1990        )
                              :
For:  PHARMACEUTICAL COMPOSITIONS

**AMENDMENT**

Honorable Commissioner of Patents
    and Trademarks
Washington, D.C.  20231

Sir:

        This is in response to the Official Action dated May 4, 1990, the period for response to which has been extended to expire on November 4, 1990, by the filing herewith of a Petition for a three month extension of time and and payment of the required fee.  Please amend the above-identified application as follows.

<u>IN THE CLAIMS</u>:

        Claim 1, line 2, before 'of ranitidine' please insert --an effective amount--;
            Line 4, please delete "also containing" and insert --comprising--.

        Please cancel claims 8-11 and insert the following claims therefor:

8.
~~15.~~    A pharmaceutical composition as claimed in claim 1, wherein the effective amount is 20-400 mg ranitidine per 10 ml dose expressed as free base.

9.
~~16.~~    A pharmaceutical composition as claimed in claim 1, wherein the effective amount is 20-200 mg ranitidine per 10 ml dose expressed as free base.

10.
~~17.~~    A pharmaceutical composition as claimed in cliam 1, wherein the effective amount is 150 mg ranitidine per 10 ml dose expressed as free base.

~ .al No. 07/494,804

### REMARKS

Applicant has amended the claims in order to more particularly define the invention, and in consideration of the comments contained in the outstanding Official Action. Claim 1 has been amended to indicate that the ranitidine is present in an effective amount and to delete the objected to terminology "also containing." Claim 8 has been cancelled from the application as being redundant. Claims 10-11 have been cancelled from the application and replaced by claims 15-17 which depend from claim 1. All of the claims now present in the application (claims 1-3, 5-7 and 12-17) are believed to be in full compliance with 35 U.S.C. 112 and are clearly patentable over the references of record.

More particularly, the outstanding Official Action sets forth a rejection of claims 1-3 and 5-10 under 35 U.S.C. 112, second paragraph, for the inclusion of the phrase "also containing alcohol" in claim 1. Applicant has amended claim 1 to replace the objected to terminology with the language "comprising." Accordingly, it is respectfully requested that this aspect of the rejection be withdrawn.

The Official Action indicates that the claims should state how the pH is arrived at. This aspect of the rejection, having been carefully considered, is most respectfully traversed. Applicant respectfully submits that the specification clearly teaches that pH may be adjusted by the use of buffer salts but the specification is equally clear that this is only a preferred way of adjusting the pH. If the solution is prepared using ranitidine free base as input material, then the desired pH may be obtained by the addition of a physiologically acceptable acid such as hydrochloric acid. Alternatively, if the input material is ranitidine hydrochloride, then the desired pH may be obtained by addition of the required amount of a physiologically acceptable base such as sodium hydroxide. These possibilities would be immediately apparent to one of ordinary skill in this art. These possibilities also demonstrate the fact that the precise means by which the desired pH is adjusted is not an essential feature of the invention. Accordingly, it is respectfully requested that this aspect of the rejection be withdrawn.

Claims 1-3 and 5-12 stand rejected for failing to recite amounts of ingredients. Claim 1 has been amended to indicate that the ranitidine is present in an effective amount.

2

5 8

G 000174

Serial No. 07/494,804

In addition, claims 15-17 specifically recite amounts of ranitidine present. Accordingly, it is respectfully requested that this rejection be withdrawn.

All of the claims in the application stand rejected under 35 U.S.C. 103 as being unpatentable over the Chemical Abstracts citation. This reference is said to teach the cojoined use of ranitidine and an alcohol (ethanol). The various parameters of the claims, such as pH and amounts, are considered by the Official Action as choices to one of ordinary skill in the art. The Official Action concludes that such parameters have not been demonstrated as being critical and therefore they are considered to be within the skill of the art. This rejection, having been carefully considered, is most respectfully traversed.

At the outset, Applicant specifically traverses the statement in the Official Action that the references relied upon by the Examiner teach the cojoining of ranitidine and an alcohol, e.g., ethanol. Applicant most respectfully submits that the art does not teach the cojoining of ranitidine and an alcohol and pharmaceutical composition which is an aqueous formulation for oral administration. These references do not lead one of ordinary skill in the art in any way to expect that stability of ranitidine in an aqueous oral formulation could be enhanced by the presence of ethanol and does not suggest the presence of ethanol in such compositions.

The first Chemical Abstract reference (97, 61014G) relates to a new polymorphic form of ranitidine hydrochloride (designated form 2) and includes a description of processes for its production. Applicant most respectfully submits that all that one of ordinary skill in the art would be able to infer from this reference is that ranitidine hydrochloride must be reasonably stable in ethanol since ethanol is used as a solvent for recrystallization. However, there is no teaching whatever that the stability of ranitidine or its salts as an aqueous formulation for oral administration is enhanced by the presence of ethanol and there is no suggestion that ethanol should be included in pharmaceutical formulations containing ranitidine as presently claimed.

The second Chemical Abstracts reference (104 102280Z) relates to a paper in a Scandinavian journal indicating that the presence of ethanol in a person's diet did not

3

59

G 000175

S_.al No. 07/494,804

adversely affect the gastric acid secretion inhibiting properties of ranitidine. Again, there is absolutely no teaching in this reference that would lead one of ordinary skill in the art to expect that ethanol would enhance the stability of ranitidine in aqueous oral formulations or would suggest to one of ordinary skill in the art that ethanol should be added to such formulations.

In summary, the prior art relied upon in the rejection is, in fact, extremely far removed from the presently claimed invention and in no way renders it obvious. Accordingly, it is most respectfully requested that this rejection be withdrawn.

Applicant wishes to reiterate that the stability of a pharmaceutical formulation for oral administration is the most important factor, and enhancing the stability of the active ingredients of such formulations is always an objective. Thus, in the development of any pharmaceutical formulation, it is necessary to ensure that the drug substance is stable within the formulation, which is necessary for two main reasons. Firstly, the drug substance must be stable in order to ensure that the patient is receiving the correct dosage of the drug. Secondly, it is important to ensure that the patient is not receiving significant amounts of breakdown products arising from the degradation of the drug substance in the formulation. This second point is particularly important since it is not always possible to identify fully all of the breakdown products that may occur. Consequently, the chronic toxicity of all the various compounds arising from the breakdown of the drug substance cannot be determined.

In practice, degradation of the drug substance within a formulation usually occurs upon storage and is often dependent upon a number of factors including temperature and time of storage. Any improvement that can be made in enhancing the stability of the drug substance can only benefit the patient since it ensures more accurate dosage and the intake of less breakdown products. In addition, enhancement of the stability of the drug substance also benefits from the economic point of view in that it increases the effective shelf life of the product. There is not even the most remote suggestion of this in the prior art of record.

4