# EXHIBIT
# A

LEXSEE 1995 U.S. APP. LEXIS 33800

**CARBIDE BLAST JOINTS, INC. and VERMONT AMERICAN CORPORATION, Plaintiffs-Appellants, v. RICKERT PRECISION INDUSTRIES, INC., CLAYCOMB ENGINEERING, INC. and ROBERT UHEREK, SR., Defendants/Cross-Appellants.**

95-1040, 95-1059

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*1995 U.S. App. LEXIS 33800*

**December 4, 1995, DECIDED**

**NOTICE: [*1]** RULES OF THE FEDERAL CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**

Reported in Table Case Format at: *73 F.3d 379, 1995 U.S. App. LEXIS 40603.*

**JUDGES:** Before ARCHER, Chief Judge, MICHEL and RADER, Circuit Judges.

**OPINIONBY:** MICHEL

**OPINION:** MICHEL, Circuit Judge.

Vermont American Corporation (Vermont) and Carbide Blast Joints (CBJ) appeal the September 23, 1994 judgment of the United States District Court for the Southern District of Texas, Docket No. H-88-4425, United States Magistrate Judge Nancy Johnson, finding U.S. Patent No. 4,211,440 (the '440 patent) not infringed either literally or under the doctrine of equivalents, holding the '440 patent unenforceable due to inequitable conduct, and awarding attorney fees, costs and expenses in the amount of $ 896,177.91 to defendants, Rickert Precision Industries, Inc. (RPI), Claycomb Engineering (Claycomb), and Robert Uherek. Magistrate Judge Johnson accepted the jury's verdict of no infringement of U.S. Patent No. 4,349,050 (the '050 patent) and no contributory infringement or infringement by inducement, and set aside the jury's verdicts of no inequitable conduct and infringement under the doctrine of equivalents [*2] of the '440 patent, considering the jury merely advisory on those issues. Because we conclude that the record is wholly devoid of evidence tending to show intent to deceive the Patent and Trademark Office (PTO) and there-

fore conclude that the magistrate judge's finding of the intent necessary for inequitable conduct is clearly erroneous, we reverse her holding of inequitable conduct. We also reverse her holding that prosecution history estoppel precludes infringement under the doctrine of equivalents. We conclude that equivalence was tried to the jury as a matter of right, and that there was substantial evidence supporting the jury's finding of infringement under the doctrine of equivalents, and we therefore reverse the magistrate judge's holding of no equivalent infringement of the '440 patent and direct that the jury's verdict of infringement be entered. Finally, we vacate the award of attorney fees that was based partly on the magistrate judge's erroneous finding that the patentee intended to deceive the PTO. The case is remanded for entry of the liability judgment as indicated and for trial on the quantum of damages.

BACKGROUND

The invention of the '440 patent [*3] is a blast joint, a device sometimes used in the production of oil and gas. Oil and gas typically are produced through production tubing in a well. The oil and gas pass into the well through perforations in the wall of the well and then flow to the surface through the production tubing. Oil companies use blast joints to shield the production tubing from sand that blasts holes into tubing necessitating the removal of the tubing from the well.

The blast joint of the '440 patent comprises production tubing covered by a protective sheath of tungsten carbide. The protective sheath is a series of "axially short," flat rings of tungsten carbide stacked on top of one another and held in place by two end retainers. The inventor, Bergstrom, conceived of using a stack of short tungsten carbide rings held together on the tubing by upper and lower retainers as an improvement over longer, longitudinal carbide shields that are brittle, crack, and cannot effectively bend. In 1974, Bergstrom con-

1995 U.S. App. LEXIS 33800, *

vinced Sun Oil Company to try his design in their oil wells. On July 31, 1975, Bergstrom filed an application for this blast joint design, and that application resulted in U.S. Patent No. 3,414,386 (the '386 [*4] patent).

Bergstrom later improved on the '386 design by adding a compression spring to hold the carbide rings tightly together, preventing sand from entering between loose rings and avoiding cracking of rings when the tube bent to fit the well. Bergstrom filed a continuation-in-part (CIP) application for the improved invention adding the compression spring on January 3, 1977, and that application resulted in the issuance of the '440 patent on July 8, 1980. Bergstrom died in 1984, prior to the sales giving rise to this litigation.

Vermont, the exclusive licensee under the '440 and '050 patents and the parent of CBJ, manufactures tungsten carbide rings, which it sells to CBJ. CBJ includes these rings in blast joints it sells to the oil and gas industry. RPI began selling kits of components, including two inch tungsten carbide rings and compression springs, to customers for assembly into carbide blast joints, in competition with CBJ.

On December 23, 1988, CBJ filed suit alleging infringement by RPI and Claycomb of claim 1 of the '440 patent and the '050 patent, seeking damages and preliminary and permanent injunctions. Although District Judge Lynn Hughes set an initial expedited trial [*5] date, the case was transferred to District Judge John Rainey. After three additional years, in order to facilitate a more expedited trial, CBJ consented to trial before a magistrate judge.

The magistrate judge submitted all issues to the jury with the caveat to the parties that on equitable issues the jury verdicts would be advisory only. On July 21, 1993, the jury returned a verdict finding that RPI directly infringed claim 1 of the '440 patent under the doctrine of equivalents, that neither RPI, Claycomb, nor Uherek induced infringement, that RPI contributorily infringed claim 1, that the patent was not anticipated or obvious, and that the defendants had not proven inequitable conduct resulting from the alleged offer for sale of the '386 invention before July 31, 1974, one year prior to filing, or the alleged mail-out printed publication distributed before July 31, 1974. CBJ waited several months after the verdicts for the court to enter judgment on the verdicts, and then petitioned this court for a writ of mandamus to order entry of judgment. RPI responded arguing, inter alia, that the verdict on inequitable conduct was only advisory, based on an "on-record" discussion after [*6] the charge to the jury but prior to the jury verdict. This court denied the petition.

In her December 22, 1993 Memorandum and Order, the magistrate judge, ignoring the jury verdict, held that the '440 patent was unenforceable for inequitable conduct based on the inventor's failure to disclose the sale of the '386 invention more than one year prior to the filing of the '386 patent application. She also set aside the jury's finding of infringement under the doctrine of equivalents on the alternative legal grounds that either RPI's blast joint could not be an equivalent given a correct interpretation of claim 1, or that the patentee's statements during prosecution of the '440 patent estopped CBJ from contending that the term "axially short carbide rings" in claim 1 covered RPI's two inch long rings.

After the magistrate judge's decision of non-liability, RPI moved to have the case declared exceptional and for an award of attorney fees. On this issue, the court ordered CBJ to submit documents withheld throughout trial on the basis of a claim of privilege. Before trial, a special master had concluded, and District Judges Hughes had adopted his conclusion, that the crime-fraud exception [*7] to attorney-client privilege did not apply to allow discovery of the documents or their use at trial. The magistrate judge disagreed and reviewed the documents in camera, concluding that the crime-fraud exception did apply because she found that CBJ had intentionally deceived the PTO. Based largely on these documents, she found the case "exceptional under *35 U.S.C. §  285* (1988) and awarded $ 896,177.91 in attorney fees. The magistrate judge entered final judgment holding claim 1 of the '440 patent unenforceable and not infringed and awarding attorney fees. Carbide appeals the judgment as to the unenforceability and noninfringement of the '440 patent and the award of attorney fees. RPI cross-appeals the jury's verdict of nonobviousness.

Only claim 1 of the '440 patent is at issue in this appeal. Claim 1 of the '440 patent states as follows:

> A carbide-sheathed blast joint comprising a length of oil well tubing having threaded opposed ends,
>
> a series of axially short carbide rings embracing said tubing between its ends, said carbide rings each having parallel opposed end surfaces which are continuously planar from their inner periphery to the outer periphery and are [*8] at right angles to the longitudinal axis of the tubing, the end surfaces of said carbide rings being in contiguous relation, and
>
> a wave spring embracing said tubing at one end of said series of carbide rings,

1995 U.S. App. LEXIS 33800, *

a first clamping collar fixed about said tubing at one end thereof against which the other end of said series of carbide rings engages, and

a second clamping collar fixed about said tubing at the other end thereof which holds the wave spring in compression therebetween and the carbide rings to maintain the end surfaces of the carbide rings in close contiguous relation,

said wave spring being yieldable axially in response to endwise and angular motions of the carbide rings so as to accommodate stretching and flexing of the tubing at down hole positioning and temperature.

## DISCUSSION

### A. Advisory Jury

Initially, we address CBJ's argument that the jury verdicts for inequitable conduct and for infringement under the doctrine of equivalents were binding because the magistrate judge failed to give proper notice of the jury's advisory status under Fed. R. Civ. P. 39(c), which permits a court to "order a trial with a jury whose verdict has the same effect [*9] as if trial by jury had been a matter of right." RPI argues that neither verdict was binding because the magistrate judge gave the parties proper notice that all equitable issues would be tried to an advisory jury and because the initial determination of whether to apply the doctrine of equivalents is equitable and thus appropriately reserved to the court

In her opinion, the magistrate judge notes that at numerous off-the-record jury charge conferences she made it clear that "certain issues were equitable and all equitable issues would be submitted to the jury on an advisory basis only" and thus gave the parties proper notice under Rule 39(c). The magistrate judge supports the existence of this understanding by citing to an on-the-record discussion prior to the jury verdict.

On examination of this discussion of record, we conclude that the magistrate judge notified the parties that all equitable issues would be tried by the jury in an advisory capacity only. We also conclude that the magistrate judge limited her notice to equitable issues and thus covered only inequitable conduct, the only issue at trial that was equitable in nature. *Modine Mfg. Co. v. Allen Group, Inc., 917* [*10] *F.2d 538, 541, 16 U.S.P.Q.2D (BNA) 1622, 1624 (Fed. Cir. 1990)* (quoting *Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876, 9 U.S.P.Q.2D (BNA) 1384, 1392 (Fed. Cir. 1988)*

(in banc) ("The ultimate question of whether inequitable conduct occurred is equitable in nature, committed to the discretion of the trial court, and will not be overturned by this court unless it is clear that the determination is based upon a jury's findings of fact that are unsupported by substantial evidence or 'a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the district court.'")), cert. denied, *500 U.S. 918 (1991)*. Infringement under the doctrine of equivalents is not equitable in nature and is triable as of right to the jury. *Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1522, 35 U.S.P.Q.2D (BNA) 1641, 1648 (Fed. Cir. 1995)* (in banc). Moreover, CBJ had every indication that infringement, both literal and under the doctrine of equivalents, was being tried to the jury. The only evidence of record of an "understanding" between the magistrate judge and the parties concerned equitable issues generally, with specific [*11] discussion on the record about jury instructions for inequitable conduct. Thus, finding the record devoid of any evidence of waiver by CBJ of its right to have a jury trial for those infringement issues, we must conclude that the jury's infringement verdict is binding.

### B. Inequitable Conduct

Establishing inequitable conduct for failure to disclose information to the PTO during the prosecution of a patent application requires proof by clear and convincing evidence of two facts: that the applicant failed to disclose material information, or submitted false material information, and that he acted with intent to deceive. *Kingsdown, 863 F.2d at 872, 9 U.S.P.Q.2D (BNA) at 1389*. An accused infringer must show by clear and convincing evidence that the patentee intended to deceive the PTO. Id. "Simple negligence, oversight, or an erroneous judgment made in good faith is not sufficient to satisfy the intent element." *Hycor Corp. v. Schlueter Co., 740 F.2d 1529, 1540, 222 U.S.P.Q. (BNA) 553, 561 (Fed. Cir. 1984)*. Instead, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent [*12] to deceive." *Kingsdown, 863 F.2d at 876, 9 U.S.P.Q.2D (BNA) at 1392*. Intent to mislead may not be inferred from mere failure to disclose known prior art. *Braun, Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 822, 24 U.S.P.Q.2D (BNA) 1121, 1127 (Fed. Cir. 1992); Halliburton Co. Schlumberger Tech. Corp., 925 F.2d 1435, 1443, 17 U.S.P.Q.2D (BNA) 1834, 1841 (Fed. Cir. 1991); Manville Sales Corp. v. Paramount Sys. Inc., 917 F.2d 544, 552, 16 U.S.P.Q.2D (BNA) 1587, 1593 (Fed. Cir. 1990)*.

CBJ contends that the magistrate judge clearly erred in finding that, in applying for the '440 patent without

1995 U.S. App. LEXIS 33800, *

disclosing the pre-application alleged offer of sale of the '386 device, the patentee intended to deceive the PTO. We agree. The record contains no direct evidence that CBJ intended to deceive the PTO by withholding disclosure of the '386 sales activity. Even assuming that a sale within the meaning of 35 U.S.C. § 102 in fact occurred, the magistrate judge improperly inferred deceptive intent by the patentee in the absence of any evidence that the patentee believed that his '386 patent was invalid and intended to act inequitably by withholding the sales activity. See Kingsdown, 863 F.2d at 872-73, 9 U.S.P.Q.2D (BNA) at 1392. At [*13] worst the evidence was indicative of simple negligence or an erroneous judgment not to disclose the '386 sales activity. As a matter of law, such conduct does not rise to the level of culpable intent. Orthopedic Equip. Co. v. All Orthopedic Appliances Inc., 707 F.2d 1376, 1383, 217 U.S.P.Q. (BNA) 1281, 1286 (Fed. Cir. 1983) ("mere evidence of simple negligence, oversight or an erroneous judgment made in good faith not to disclose prior art is not sufficient to render a patent unenforceable"). The magistrate judge's comments regarding an absence of "even subjective evidence of good faith" by the inventor in the record are inapposite as subjective good faith is insufficient by itself, and, in this case, the absence of exculpatory testimony was entirely due to the inventor's death prior to trial. Moreover, the burden is not on the patentee to prove good faith during the prosecution, but on the alleged infringer to prove deceptive intent. Thus, we conclude that there was no clear and convincing evidence of intent to deceive.

CBJ also attacks the magistrate judge's finding of materiality based on her finding of a sale of the '386 invention more than one year prior to the patent application. [*14] Because we hold that there was no intent to deceive and thus reverse the magistrate judge's holding of unenforceability due to inequitable conduct, we do not need to address the issues CBJ raises regarding materiality or whether in fact an on sale bar arose from the alleged offer of sale.

C. Infringement

The magistrate judge granted RPI's motion for judgment as a matter of law (JMOL) and held that CBJ failed to present sufficient evidence to sustain its claim of infringement under the doctrine of equivalents. Alternatively, the magistrate judge held that even if CBJ's evidence was sufficient, the doctrine of prosecution history estoppel precluded CBJ from seeking the range of equivalents necessary to allow a finding of infringement. Specifically, the magistrate judge held: (1) that prosecution history estoppel limited the application of the doctrine of equivalents to one inch rings, and (2) that CBJ was estopped to contend that square wire coil springs were equivalent to the claimed wave springs. We first address the magistrate judge's holding on prosecution history estoppel.

An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents [*15] if "it performs substantially the same function in substantially the same way to obtain the same result." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608, 85 U.S.P.Q. (BNA) 328, 330, 94 L. Ed. 1097, 70 S. Ct. 854 (1950). Prosecution history estoppel, however, limits the range of equivalents available to a patentee by preventing recapture of subject matter deliberately surrendered during prosecution of the patent. Townsend Eng'g Co. v. HiTec Co., Ltd., 829 F.2d 1086, 1090, 4 U.S.P.Q.2D (BNA) 1136, 1139 (Fed. Cir. 1987). The application of prosecution history estoppel raises a question of law which we review de novo. LaBounty Mfg. Inc. v. United States Int'l Trade Comm'n, 867 F.2d 1572, 1576, 9 U.S.P.Q.2D (BNA) 1995, 1998 (Fed. Cir. 1989).

1. There is no estoppel as to two inch rings

The magistrate judge concluded that, because of arguments made to distinguish over Duesterberg U.S. Patent No. 2,925,097 (Duesterberg) and Ribb et. al. U.S. Patent No. 3,382,930 (Ribb), CBJ is estopped to argue that the term "axially short" is met by RPI's two inch carbide rings with flat ends. The magistrate judge cites excepts from the prosecution history of the '440 patent application and its [*16] parent, the '386 patent application, wherein Bergstrom, the applicant and inventor, described the rings as "not substantially greater than one inch," and used examples with rings that are an inch long as support for her holding that the applicant distinguished its invention on the basis of having rings less than two inches.

We disagree that CBJ is precluded from claiming a device with two inch rings as an equivalent. Not every statement made by a patentee to distinguish a prior art reference creates a separate estoppel. Read Corp. v. Portec, Inc., 970 F.2d 816, 824, 23 U.S.P.Q.2D (BNA) 1426, 1433 (Fed. Cir. 1992). We must read the statements in the context in which they were made. Id.

The magistrate judge ignored that context and erroneously concluded that Bergstrom was arguing for a distinction based solely on the length of rings being one inch or "not substantially greater than one inch," meaning less than two inches. When read in full, however, Bergstrom's statements during the prosecution history merely indicate that his device has "axially short" rings such that " for the size of production tubing which is presently standard, the instruction to form the carbide ring to [*17] axial lengths of one inch will give the one who follows the instructions of the specification the

1995 U.S. App. LEXIS 33800, *

benefits of the invention." (emphasis added). Thus, Bergstrom used the one inch measure in relation to the standard tubing at the time, which was slightly larger than two inches, expressing the need for a proportion of length of ring to width of production tubing, rather than absolutely fixing the length at one inch. This is consistent with Bergstrom's definition in the prosecution of the '386 patent application of "axially short" as meaning "rings being of an axial length less than the outer diameter of the flow tube." These statements indicate that the "not substantially greater than one inch" language in the '386 prosecution relates to the standard production tubing and by itself does not limit the patentee to one inch rings or rings that are less than two inches.

Finally, Bergstrom explicitly states in his discussion of the "axially short" rings during the '440 prosecution that "some deviation from the strict observance of the one inch limit is possible. The function can be performed with minor variation, i.e. plus or minus one inch, without departing from the invention." [*18] (emphasis added). Thus, even if we assume one inch as the starting point for ring length, a ring whose length was shorter than the width of the production tubing but was two inches could still infringe the '440 patent. Therefore, although we do not address whether CBJ would be estopped from arguing that a device longer than two inches but with otherwise appropriate proportions could infringe, we hold that CBJ is not estopped from arguing that RPI's device, which has "axially short," two inch rings, infringes the '440 patent.

2. Prosecution history estoppel does not preclude CBJ from obtaining the necessary range of equivalents to cover RPI's coil spring

The magistrate judge held that Bergstrom denied the equivalence of the Arnwine U.S. Patent No. 3,365,000 (Arnwine) coil spring and its own wave spring in arguing for patentability, and was therefore estopped from asserting as an equivalent a device that utilizes a coil spring, as does RPI's device. On careful reading of the statements concerning the Arnwine reference in the prosecution history, we conclude, however, that the magistrate judge was in error. Specifically, she misconstrued Bergstrom's statements to include an [*19] equivalent based on a coil spring that met the functions that Bergstrom stated that the Arnwine coil spring could not.

Arnwine used a long coil spring to compress degradable polypropylene rings that Arnwine intended to be ejected from the tubing into the well bore as they eroded. During prosecution, Bergstrom noted that Arnwine required a spring with a long axial displacement to push down the stack of rings as the rings disintegrate from the tubing. Rather than surrendering the equivalent

of any coil spring, Bergstrom expressly rejected the only use of Arnwine's axially long coil spring:

> Arnwine's coil spring and its disclosed utility are not the equivalent of applicant's wave spring. The situation we have here is not one of simply replacing one back up spring with another. Applicant intentionally avoids a coil spring such as Arnwine requires to reach along the length of the blast joint. To the contrary applicant utilizes a wave spring at the top of the blast joint assembly which can be loaded in a much shorter axial distance. . . .
>
> . . .
>
> As distinguished from Arnwine's coil springs, applicant's wave springs are capable of short axial displacement during loading [*20] such that it may be held in compression between the top of the carbide rings stack and the top collar to hold the carbide rings and surfaces in close contiguous contact and at the same time be capable of yielding to the expansion of the flow tube relative to the carbide rings whether the same occurs in bending of the flow tube during installation of the blast joint into the oil well or when due to temperature changes in the oil well itself. Arnwine's coil springs are not so characterized and they are not interchangeable with applicant's wave springs. (emphasis added).

Bergstrom, therefore, stated that the Arnwine coil spring differed in its ability to function as the '440 wave spring because of its long axial structure, and, indeed, was designed for a different function than the '440 wave spring, i.e., to compress eroding plastic rings in a production tube that had already been inserted. We cannot hold CBJ estopped from claiming an equivalent based on a coil spring that contains characteristics on which Bergstrom did not differentiate the Arnwine spring. Bergstrom's statements cannot be read to encompass all coil springs regardless of structure or function.

Because we disagree [*21] with the magistrate judge's construction of the applicant's statements and the examiner's basis for allowance in the prosecution history, we reverse the magistrate judge's holdings that CBJ is estopped from asserting an equivalent with either (1) a two inch ring, and/or (2) a coil spring that itself has characteristics differentiating it from the Arnwine reference.

1995 U.S. App. LEXIS 33800, *

3. There was substantial evidence supporting the jury's verdict finding infringement under the doctrine of equivalents

The magistrate judge held that the jury's verdict was unsubstantiated by the evidence because CBJ failed to make a particularized function/way/result comparison until its rebuttal to RPI's directed verdict motion. To the extent the magistrate judge construes our discussion in *Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d 1422, 1425-26, 10 U.S.P.Q.2D (BNA) 1767, 1770 (Fed. Cir. 1989)*, as holding that such evidence must be presented in the patentee's case in chief, she is in error. In *Lear*, we stated that before an infringement case can be submitted to the jury under the doctrine of equivalents, the identity of function, means, and result must be presented to the jury in the form of particularized [*22] testimony. A summary assertion mentioning equivalence during closing argument is insufficient. Id. Here, however, CBJ presented particularized testimony both in its case in chief and in rebuttal to RPI's motion for directed verdict. Therefore, we conclude that the jury had particularized evidence that the function, operation and result of the wave springs and square coil springs were substantially the same, and, thus, had substantial evidence to conclude that the springs were equivalent.

Finally, we address the magistrate judge's fact finding that RPI's square spring is not equivalent to the wave springs of the claimed invention. The premise of her finding of no equivalency is that she can compare a single wave spring with RPI's square spring because claim 1 of the '440 patent only explicitly recites a singe wave spring. Her premise is incorrect, however, because claim 1 uses an open-ended format, and thus literally covers a carbide blast joint with at least one wave spring. Once we read claim 1 as covering a plurality of wave springs, her basis for concluding that the jury could not have found an equivalent in RPI's square spring cannot stand.

D. The '440 patent is not [*23] invalid for obviousness

RPI cross-appeals the jury's verdict that the patent is not invalid for obviousness under *35 U.S.C. § 103* because the '386 blast joint was sold in 1975, more than one year before the '440 application's filing date, and, therefore, represents prior art as to claim 1 of the '440 patent. RPI contends that as a matter of law the '440 patent cannot obtain the benefit of the '386 filing date under *35 U.S.C. § 120* because RPI alleges that the '440 contains new matter -- the wave spring -- and that the "wave spring" limitation of claim 1 is not supported by the '386 specification.

The ultimate question of obviousness is one of law, subject to de novo review by this court, with underlying questions of fact reviewable under the clearly erroneous

standard in bench trials and the substantial evidence standard in jury trials. *Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1564, 1 U.S.P.Q.2D (BNA) 1593, 1595-96 (Fed. Cir.), cert. denied, 481 U.S. 1052, 95 L. Ed. 2d 843, 107 S. Ct. 2187 (1987)*. Here, the primary issue is whether the 1975 sale of the '386 invention is available as prior art to the '440 patent or whether claim 1 of the '440 patent must be considered [*24] in light of new matter. Further, because the jury decided a general verdict, we must presume that the jury resolved the underlying factual disputes in CBJ's favor. See *Jurgens v. McKasy, 927 F.2d 1552, 1558, 18 U.S.P.Q.2D (BNA) 1031, 1036 (Fed. Cir.) cert. denied, 502 U.S. 902, 116 L. Ed. 2d 232, 112 S. Ct. 281 (1991)*.

There exist two ways in which the jury could have arrived at its conclusion of nonobviousness. First, the jury could have found that the original description of the invention in the '386 specification met the requirements of *35 U.S.C. § 112*. n1 Whether the written description requirement is met is a question of fact. *Ralston Purina Co. v. Far-Mar-Co., Inc., 772 F.2d 1570, 1575, 227 U.S.P.Q. (BNA) 177, 179 (Fed. Cir. 1985)*. Consequently, we would need to assume that the jury found in favor of CBJ, that the section 112 requirement was met, and therefore the '386 invention was not available as a reference. Under this alternative, we would conclude that the patent is nonobvious as a matter of law because there would be no prior art to evaluate.

n1 An invention claimed in a CIP application is entitled to the benefit of the filing date of a parent application when the parent satisfies the written description requirement of *35 U.S.C. § 112*. *Racing Strollers, Inc. v. TRI Indus., Inc., 878 F.2d 1418, 1419, 11 U.S.P.Q.2D (BNA) 1300, 1302 (Fed. Cir. 1989)*. Thus, the inventor must have had possession of the later claimed invention on the filing date of the earlier application. See *Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 221 U.S.P.Q. (BNA) 97 (Fed. Cir. 1984)*. The mere filing of a CIP with additional matter is not of itself an admission that the matter is new within the meaning of *35 U.S.C. § 112*. See *Paperless Accounting, Inc. v. Bay Area Rapid Transit Sys., 804 F.2d 659, 231 U.S.P.Q. (BNA) 649 (Fed. Cir. 1986)*.

[*25]

Second, even if we assume that claim 1 of the '440 patent is only supported by new matter, we would conclude that the claim is not obvious in light of the new matter because RPI did not file a motion for JMOL on nonobviousness, and, thus, cannot challenge the suffi-

1995 U.S. App. LEXIS 33800, *

ciency of the evidence underlying the presumed jury findings. See *Jurgens, 927 F.2d at 1557-58.*

Thus, although it is unclear what the jury decided on the underlying Issues, we must conclude that claim 1 of the 440 patent is not invalid for obviousness.

E. Attorney Fees

Section 285 of Title 35 provides that the court may award reasonable attorney fees to the prevailing party in "exceptional cases." The decision to award attorney fees is discretionary with the trial judge. *Beckman Instr., Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551, 13 U.S.P.Q.2D (BNA) 1301, 1304 (Fed. Cir. 1989).* To show that the magistrate judge abused her discretion, CBJ must demonstrate that the magistrate judge based her award on "clearly erroneous factual findings, legal error, or a manifest error of judgment." *Mathis v. Spears, 857 F.2d 749, 754, 8 U.S.P.Q.2D (BNA) 1029, 1033 (Fed. Cir. 1988).* The finding that a case is "exceptional" is a finding [*26] of fact reviewable under the "clearly erroneous" standard. *Beckman, 892 F.2d at 1551, 13 U.S.P.Q.2D (BNA) at 1304.* Inequitable conduct before the PTO, misconduct during litigation, vexatious or unjustified litigation, and frivolous suit are among the types of conduct that can form a basis for finding a case exceptional. Id. Such conduct must be proven by clear and convincing evidence. Id.

The magistrate judge based her finding that this case is exceptional on her holding of inequitable conduct, her review of portions of privileged documents that she found supported her holding of inequitable conduct, her conclusion that CBJ "took positions in this litigation that it had previously conceded in the prosecution history," CBJ's objection to mediation after the jury verdict and the magistrate judge's decision, and CBJ's failure to convince the jury that RPI infringed the '050 patent. Because we hold above that the magistrate judge erred as a matter of law in finding intent for inequitable conduct, inequitable conduct cannot support the magistrate judge's finding

that the case is exceptional. Additionally, because there was no evidence of fraud on the PTO, the magistrate judge abused [*27] her discretion in relying on the privileged documents under the fraud exception to attorney-client privilege, and thus we do not directly address the content of those privileged documents. However, even if we assume that those documents were properly in evidence, nothing in them establishes the intent required to demonstrate inequitable conduct. We also reject that CBJ's failure to obtain a favorable verdict of infringement on its '050 patent transforms its entire case into frivolous or vexatious litigation. The mere failure to prevail on an issue does not constitute frivolous or vexatious litigation. See id. Additionally, the magistrate judge herself erred in her holding of prosecution history estoppel, and CBJ had reason to reject mediation as not in its interests, as borne out in the disposition of this case on appeal. Finally, we note that section 285 permits the court to award attorney fees only to "the prevailing party," a status RPI does not have under our disposition of this case. See *Radio Steel & Mfg. Co. v. MTD Prods., Inc., 731 F.2d 840, 848, 221 U.S.P.Q. (BNA) 657, 664 (Fed. Cir.), cert. denied, 469 U.S. 831, 83 L. Ed. 2d 62, 105 S. Ct. 119 (1984).*

CONCLUSION

For [*28] the reasons discussed above, we reverse the magistrate judge's holding of inequitable conduct, reverse her holding that prosecution history estoppel precludes infringement under the doctrine of equivalents, hold that equivalents was tried to the jury as a matter of right, hold that there was substantial evidence supporting the jury's finding of equivalent infringement of the '440 patent, and remand for entry of the jury's verdict of infringement and trial on the quantum of damages. We also vacate the magistrate judge's award of attorney fees.

COSTS

Each party to bear its own costs.