# EXHIBIT B

Intellectual Property Library        ISSN 1526-8535

FULL TEXT OF CASES (USPQ2D)
All Other Cases

# Refac International Ltd. v. Matsushita Electric Corp. of America (DC NJ) 17 USPQ2d 1293 Refac International Ltd. v. Matsushita Electric Corp. of America

## U.S. District Court District of New Jersey
## 17 USPQ2d 1293

**Decided October 22, 1990**
**No. 88-2586**

## Headnotes

### PATENTS

1. Infringement - Doctrine of equivalents - In general    (§ 120.0701)

### JUDICIAL PRACTICE AND PROCEDURE

Procedure - Defenses - Laches    (§ 410.1803)

Procedure - Jury trials    (§ 410.42)

Special master's decision, in patent infringement action, to try equitable issues of inequitable conduct, champerty, laches, and obviousness-type double patenting prior to jury trial on legal issues does not violate Sevent

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V        1

Intellectual Property Library        ISSN 1526-8535

Amendment right to jury trial, but equitable issues encompassed by doctrine of equivalents may be tried first only if patent claim can be construed as matter of law.

## Case History and Disposition:

Page 1293

Consolidated actions brought by Refac International Ltd. against Matsushita Electric Corp. of America, etc., et al., for infringement of U.S. patents nos. 4,110,801, 4,087,839, and Re. 28,461. On motion of Refac International Ltd. objecting to first report and recommendation issued by special master. Special master's report adopted in part in bench ruling.

Attorneys:
    Cobrin, Feingertz & Gittes, by Peter T. Cobrin, New York, N.Y., for plaintiff.

    Carpenter, Bennett & Morrissey, by Joseph D. Rasner, Newark, N.J., for Toshiba America Inc., Akai America Ltd., and Teknika Electronics Corp.

    Banner, Birch, McKie & Beckett, by Edward F. McKie and Thomas L. Peterson, Washington, D.C., for Toshiba America Inc. and U.S. Phillips Corp.

    Weiner, Timins & Lesniak, by Wayne H. Weiner and Bruce R. Crelin, Roseland, N.J., for Samsung Electronics America Inc.

    Louis Weinstein, Philadelphia, Pa., for Jerome H. Lemelson.

    Saiber, Schlesinger, Satz & Goldstein, by Sean R. Kelly, Newark, N.J.; Birch, Stewart, Kolasch & Birch, by Andrew F. Reish, Falls Church, Va., for GoldStar Co. Ltd. and GoldStar Electronics International Inc.

### Opinion Text

**Opinion By:**
    Ackerman, J.

This matter comes before the Court on the motion to Refac International, Ltd. ("Refac") who objects to the first

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V        2

Intellectual Property Library        ISSN 1526-8535

report and recommendations of the special master and opposes their adoption by this Court. Specifically, Refac objects to the Special Master's finding that pursuant to this Court's Order of Reference dated July 3, 1990, he was

Page 1294

empowered to try all equitable issues in this case prior to a jury trial.

Having reviewed the Special Master's report as well as the record and the briefs, and having listened to the parties' oral argument earlier today, I now find that the Special Master may try the issues of inequitable conduct, champerty, laches, and "obviousness-type" double patenting. Further, I find that if the patent claims at issue here can be construed as a matter of law, the Special Master may also try the claim and defense encompassed by the doctrine of equivalents.

## I. Background

The present case began as three separate actions brought by Refac charging a variety of defendants with infringement of U.S. Patent Nos. 4,110,801, 4,087,839, and Re. 28,461. Pursuant to an agreement with Jerome Lemelson, the patentee, Refac holds an exclusive license to these patents which cover technology used in VCRs. Since each case brought by Refac involved similar complex patent issues, this Court consolidated the actions and, on July 3, 1990, issued an Order of Reference appointing a Special Master. Among other duties, this Order authorized the Special Master "to fully consider and prepare reports to be submitted to the Court, including findings of fact and conclusions of law, regarding all equitable issues asserted by the parties both as claims and defenses (but excluding an accounting for damages) that require trial on the merits and to conduct such a trial." See Order of Reference Paragraph D.

The Order went on to conclude: "The trial and reports on all equitable issues under this section shall be completed prior to commencement of the trial to a jury of the legal issues in this consolidated action." Id.

At a status and planning conference convened at the Special Master's request on July 23, 1990, the Special Master advised parties that he would try certain issues which he believed were equitable and, therefore, within his authority as set out in the Order of Reference. Refac objected to the scope of the Special Master's interpretation of his authority, claiming that many of the issues he indicated were within his authority to try prior to a jury trial actually involved factual determinations which should be made by a jury.

The implication of his argument was that the Special Master, by delivering his report and recommendations first, would preclude the jury from determining these factual issues. In effect, Refac argued the Special Master would be denying Refac its Seventh Amendment right to a jury trial.

Initially regarding Refac's objections as nondispositive, a Special Master orally denied its motion. However, upon considering that Refac raised a constitutional question that may be appealable, the Special Master decided to elaborate on his reasoning in what would become his first report.

## II. The Special Master's First Report

In analyzing whether Refac's Seventh Amendment right to a jury trial was jeopardized by his intended course of action, the Special Master focused on one key question: Whether "the equitable issues ... 'overlap' the legal issues to be tried [by] a jury." See Special Master's First Report ("Report") at 3.

He found the equitable issues included a claim of infringement under the judicial doctrine of equivalents, and the defenses of the reverse doctrine of equivalents, champerty, laches, equitable estoppel, inequitable conduct in the U.S.P.T.O., unlawful extension of patent monopoly, and patent marking. 1 The legal issues were patent infringement and literal infringement. Being careful to distinguish between "issues" which could not overlap and "evidence" which could, he found that there was no impermissible overlap between these equitable issues and the legal issues which would be decided by a jury.

More specifically, the Special Master was simply "unable to discern" how the equitable defenses of laches,

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V        3

Intellectual Property Library        ISSN 1526-8535

equitable estoppel, champerty, and the reverse doctrine of equivalents, extension of monopoly, and patent marking would involve the same factual determinations as the legal issues. *Id.*

Regarding the defense of inequitable conduct, he found that the United States Court of Appeals for the Federal Circuit has specifically held in what was a case of first impression that inequitable conduct may be decided by the bench prior to a demanded jury trial. *See Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209 [ 2 USPQ2d 2015 ] (Fed. Cir. 1987); *see also Kingsdown Medical Consultants v. Hollister, Inc.*, 863 F.2d 867, 976 [ 9 USPQ2d 1831 ] (Fed. Cir. 1988) (inequitable conduct is an equitable issue).

Page 1295

Finally, the Special Master determined that the doctrine of equivalents required construction not of a patent claim, which would overlap with factual determinations usually left to a jury, but of a hypothetical claim equitably equivalent to a patent claim, which would not. For these reasons, he determined that Refac's Seventh Amendment right would not be jeopardized if he tried the equitable issues prior to the jury trial of the legal issues.

## III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 53, this Court may refer the nonjury issues in a case to a special master only where exceptional conditions require it. Federal Rule of Civil Procedure 53(b).

Once appointed, the special master is required to fulfill the duties detailed in the order of reference and to issue reports to the appointing court which set forth his findings and recommendations. Regardless of whether the special master was appointed with the parties' consent, his reports will not constitute an impermissible usurpation of judicial power as long as the court referring the case ultimately decides the issues contained in the report. *See United States v. Raddatz*, 447 U.S. 667 (1980).

Put differently, the appointment of a special master is constitutional if the court's standard for reviewing his reports is *de novo*. *See United Steelworkers of Amer., AFL-CIO v. New Jersey Zinc Co.*, 828 F.2d 1001 (3d Cir. 1987). With this standard in mind, I will discuss the merits of Refac's objections.

## IV. Discussion

Prior to specifically examining each of the issues Refac would like to prevent the Special Master from trying, it is important to carefully lay out the parameters of the right which Refac claims will be infringed. The Seventh Amendment states: "In suits at common law, where the value in controversy shall exceed twenty dollars, *the right of trial by jury shall be preserved.* U.S. Const. Amend. VII (emphasis added).

Analyzing the scope of this right in a case involving both legal and equitable claims, the Supreme Court stated in language that was as forceful as it was straightforward: "[O]nly under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Beacon Theatres v. Westover*, 359 U.S. 500, 510-11 (1958).

Fourteen years later, the Supreme Court further strengthened the right to a jury trial by applying the *Beacon* holding to a an equitable case involving what the district court had termed "incidental legal claims." *See Dairy Queen v. Wood*, 369 U.S. 469, 470-73 (1962).

Even here, the Court explained, factual issues related to both the legal and equitable claims must be left to a jury. *Id.* that 479.

At times in its brief, Refac appears to argue that these cases, taken together, prohibit this Court from deciding an equitable claim prior to holding a jury trial on legal issues. This Court does not read these cases so broadly. Instead, this Court believes that the import of this precedent for the present case is twofold: First, the court must be convinced that all the issues the Special Master seeks to try are equitable, and second, that *those issues do not*

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V        4

Intellectual Property Library    ISSN 1526-8535

*involve factual determinations which are common to the legal claims.* 2

Page 1296

If these issues are equitable and do not involve factual determinations common to the legal claims, then there is no Seventh Amendment problem with the Special Master trying them prior to a jury trial. I will, therefore, apply this analysis to each of the following issues Refac claims are inappropriate for a trial by the Special Master: infringement by reason of equivalents or lack of infringement by the reverse doctrine of equivalents; champerty; laches; and "obviousness-type double patenting. 3

## A. Infringement by reason of equivalents or lack of infringement by the reverse doctrine of equivalents

The doctrine of equivalents (which encompasses both infringement by reason of equivalents and lack of infringement by the reverse doctrine of equivalents) involves the relationship between the accused product and the patented claim. Yet, unlike literal infringement where the focus is whether the accused product comes within the meaning of the words of the patent claim, the doctrine of equivalents examines whether the accused product is equivalent to the patent claim. *See* D. Chisum, 4 *Patents* Section 18.04 (1990).

A claim of infringement by reason of equivalents may be proven when the accused product "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." 4 *Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 934 [ 4 USPQ2d 1737 ] (Fed. Cir. 1987), *cert. denied,* 485 U.S. 961 (1988).

The defense of lack of infringement by reverse doctrine of equivalents is, as counsel noted this morning, simply the flip side of infringement by reason of equivalents. It assumes the accused product falls within the literal meaning of the patent claims but nevertheless "is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way." *See Graver Mfg. Co. v. Linde Co.,* 339 U.S. 605, 608-09 [ 85 USPQ 328 ] (1949).

In the form of either a claim or a defense, the doctrine of equivalents is considered by the Federal Circuit Court to be equitable. *See Chaney v. Veterans Administration,* 906 F.2d, 697, 702 (Fed. Cir. 1990); *Hormone Research Foundation v. Genentech, Inc.,* 904 F.2d 1558, 1564 [ 15 USPQ2d 1039 ] (Fed. Cir. 1990); *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861 [ 228 USPQ 90 ] (Fed. Cir. 1985).

Starting first with the claim of infringement by reason of equivalents, Refac argues that it involves the determination of a factual issue common to the legal claim of literal infringement. More specifically, the starting point of both literal infringement and infringement by reason of equivalents is construction of the patent claim. Construction of the claim for literal infringement is needed before there can be a direct comparison between the meaning of the claim and the accused product. Construction of the claim for infringement by reason of equivalents is needed so that the scope of equivalents can be determined and compared to the accused product.

In literal infringement cases tried before a jury, an undisputed claim may be construed as a matter of law. But when the meaning of a term in the claim is disputed and must be explained via extrinsic evidence, the construction of the claim is left to the jury. *See Palumbo v. Don-Joy Co.,* 762 F.2d 969 [ 226 USPQ 5 ] (Fed. Cir. 1985); *McGill, Inc. v. John Zink Co.,* 736 F.2d 666, 671-72 [ 221 USPQ 944 ] (Fed. Cir.), *cert. denied,* 469 U.S. 1037 (1984).

Therefore, assuming the patent claim cannot be construed as a matter of law, Refac argues there is a common factual determina

Page 1297

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V    5

Intellectual Property Library        ISSN 1526-8535

tion underlying both the legal and equitable claims of infringement such that the prior determination of the equitable claim impermissibly burdens Refac's Seventh Amendment right.

Both the Special Master and the defendants attempt to evade the conflict Refac points out by relying on the recent Federal Circuit case, *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677 [ 14 USPQ2d 1942 ] (Fed. Cir. 1990). In discussing whether prior art is a limitation on the scope of equivalents, the *Wilson* court stated:

"Whether prior art restricts the range of equivalents of what is literally claimed can be a difficult question to answer. To simplify analysis and bring the issue onto familiar turf, it may be helpful to conceptualize the limitation on the scope of equivalents by visualizing a *hypothetical* patent claim, sufficient in scope to *literally* cover the accused product. The pertinent question then becomes whether that hypothetical claim would have been allowed by the PTO over the prior art. If not, then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents. If the hypothetical claim could have been allowed, then *prior art* is not a bar to infringement under the doctrine of equivalents.
*Id.* at 684 (emphasis in original).

In his Report, the Special Master found that the use of a hypothetical claim can be extended beyond the particular question it was used to answer in *Wilson*, 904 F.2d 677 [ 14 USPQ 1942 ], to apply to all aspects of the doctrine of equivalents analysis. Thus, by using "a hypothetical claim different from, equitably equivalent to, the patent claim," the Special Master believes he avoids the Seventh Amendment problem. *See* Report at 5.

Having studied the *Wilson* decision carefully, I must disagree with the meaning the Special Master derives from it. In my view, the *Wilson* court's use of a hypothetical claim was simply a technique to assist the reader in following their analysis of the particular question at issue. The language used to preface their analysis - such as "[t]o simplify analysis" and "it may be helpful to conceptualize" - is not indicative of a court attempting to change how an issue is examined.

More importantly, the *Wilson* court is discussing the relationship between prior art and the doctrine of equivalents. It does not mention, much less discuss, any Seventh Amendment concerns. Without such a discussion, I am hesitant to extend the *Wilson* court's use of a hypothetical claim beyond the issue before it. For this reason, I find that there is a possible overlap between the equitable and the legal claims of infringement such that the Special Master cannot decide the issue of equitable infringement if he finds that the patent claims involved here cannot be determined as a matter of law.

Upon initial consideration, the defense of a lack of infringement by reverse doctrine of equivalents appears to avoid the Seventh Amendment problem described above because literal infringement is assumed. *See Graver Tank,* 339 U.S. at 608-09.

However, on closer inspection, I find that the problem, in fact, is not avoided. To determine what is *not* equivalent, one must know the limits of equivalence which, in turn, depends on what is claimed. Put differently, claim construction must be the starting point for this analysis, too. Therefore, the same limitation which applies to infringement by reason of equivalents applies here, too.

## B. Champerty

Champerty is defined as "a bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be received. Black's Law Dictionary 209 (5th ed. 1979); *accord Alexander v. Unification Church of Amer.,* 634 F.2d 673, 677 n.5 (2d Cir. 1980).

It is prohibited by statute in many states, including New York whose law of champerty applies in this action. 5 Refac claims

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V        6

Intellectual Property Library        ISSN 1526-8535

that champerty must be a legal issue because it has a statutory basis and requires a factual determination of the parties' contractual intent.

Contrary to Refac's assertion, however, the mere fact that a claim now has a statutory basis or involves factual determinations does not mean that it falls within the scope of the Seventh Amendment. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48-49 (1937) ("The instant case is not a suit at common law or in the nature of such a suit. The proceeding is a statutory proceeding. ... The contention under the Seventh Amendment is without merit."); *Atlas Roofing Co. v. Occupational Safety Comm'n.*, 430 U.S. 442, 458-60 (1977) (holding that the right to a jury trial is not determined by whether a claim involves factual determinations).

Instead, the primary question is whether the issue was at common law one of law or equity. *See id.* at 449-61; *Ross v. Bernhard,* 396 U.S. 531, 532-43, 538 n.10.

Champerty, when not already codified, was considered a defense in equity. *See, e.g., In re Kamerman*, 278 F.2d 411, 413 (2d Cir. 1960) (Champertous contract "disentitled [defendant] to any equitable relief."); *Jamison Coal & Coke Co. v. Goltra*, 143 F.2d 889 (8th Cir. 1943) (champertous contract cannot justify equitable relief), *cert. denied*, 323 U.S. 769 (1949); *Keiper v. Miller*, 68 F. 627, 629 (C.C. Pa.) ("[C]ourts [of equity] should lend no countenance to agreements which partake in any manner of champerty, though they may be barely valid at law."), *aff'd*, 70 F. 128; *Byrne v. Kansas City,* 55 F. 44, 45 (C.C. Tn.) (since a court of equity would get around technicality barring defense of champerty and a Tennessee statute vests the court of law with the powers of the courts of equity, the contract is void), *mod. on other grounds,* 61 F. 605 (C.C. Tn. 1844).

Therefore, since it is not a legal issue, it does not trigger Refac's right to a jury trial.

## C. Laches

The Federal Circuit has described the defense of laches as follows:

"Laches is an equitable defense which ... bars recovery of damages for any [patent] infringement occurring prior to the filing of the suit. In order to establish a laches defense, the defendant must prove an unreasonable and inexcusable delay in the assertion of the claim and material prejudice to the defendant resulting from the delay. Where the delay in filing the suit exceeds 6 years, the court will presume the delay was unreasonable and prejudicial to the defendant. The burden is then on the patent owner to prove the existence and reasonableness of an excuse for the delay, as well as to show the lack of prejudice to the infringer.

"... In determining the length of delay for laches, a court must look at the time the patentee knew, or in the exercise of reasonable diligence should have known, of the alleged infringing activity."

*Jamesbury Corp. v. Litton Indus. Prod., Inc.*, 839 F.2d 1544, 1551-52 [ 5 USPQ2d 1779 ] (Fed. Cir. 1988), *cert. Denied,* 488 U.S. 825 (1988).

Refac argues that the factual determination regarding the date of patentee's constructive or actual knowledge of the alleged infringement impermissibly overlaps with the factual determination regarding the date the accused infringer was notified of the

Page 1299

alleged infringement which is required for damages to be awarded for legal claim of infringement. *See* 35 U.S.C. Section 287 (1988) ("[N]o damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.").

Refac's argument, however, misses a crucial distinction between evidence and factual issues. "[T]he [Seventh Amendment] prohibition is not against having two juries review the same *evidence*, but rather against having two juries decide the same *essential* issues." *See In re Innotron Diagnostic,* 800 F.2d 1077, 1086 [ 231 USPQ 1077 ] (Fed. Cir. 1986) ( quoting from *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce Fenner & Smith, Inc.*, 587 F.Supp. 1112, 1117 223 USPQ 888 ] (D.Del. 1984)); *accord Gardco,* 820 F.2d at 1213.

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V        7

Intellectual Property Library          ISSN 1526-8535

Therefore, even assuming that the same event or evidence proves both patentee's knowledge and the accused infringer's notice, the factual issues are distinct. As a result, no Seventh Amendment conflict can or will be triggered by the Special Master's trial defense of laches prior to a jury trial. 6

## D. Obviousness-type double patenting

Obviousness-type double patenting voids a subsequently issued patent for a "mere variation of that [previous] invention which would have been obvious to those of ordinary skill in the relevant art." *In re Kaplan,* 789 F.2d 1574, 1580 [ 229 USPQ 678 ] (Fed. Cir. 1986); *accord, Gerber Garment Tech., Inc. v. Lectra Systems, Inc.,* Civ. Act. No. 89-1743, 1990 U.S. App. Lexis 17703 at 8 [ 16 USPQ2d 1436 ] (Fed. Cir. Oct. 10, 1990).

As defined, it involves a factual determination regarding whether the subsequent patent represents simply a "mere variation" over the previous one. Refac claims this issue impermissibly overlaps with the factual determination required for an obviousness defense. *See* 35 U.S.C. Section 103 (1988).

A patent is deemed obvious and, therefore, void if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *Id.*

The factual determination to be made here is whether the original patent was significantly different from the prior art such that it was not "obvious."

The factual determinations to be made under each of these defenses are similar - perhaps parallel is a better description - but they nevertheless do not overlap. Obviousness-type double patenting is very specific: It compares a subsequent patent to a previous one issued to the same inventor. By contrast, obviousness under Section 103 is general: it compares a new patent to all prior art. Therefore, the Special Master may try the issue of obviousness-type double patenting without impermissibly infringing on Refac's right to a jury trial.

## Conclusion

[1] For all of the foregoing reasons, this Court finds that there is no impermissible factual overlap between the equitable issues of inequitable conduct, champerty, laches, and obviousness-type double patenting and the legal issues. Therefore, the Special Master may try these issues prior to the jury trial on the legal issues. 7

If the patent claim cannot be construed as a matter of law, there is an impermissible overlap between the factual determination made for literal infringement, a legal issue, and the equitable issues encompassed by the doctrine of equivalents. Therefore, the Special Master may try the claim of infringement by reason of equivalents and the defense of lack of infringement by reverse doctrine of equivalents only if the patent claim can be construed as a matter of law.

---

**Footnotes**

Footnote 1. The Special Master indicated that he was unsure whether patent marking was actually an equitable claim. Therefore, he requested that parties submit memoranda of law on the issue.

Footnote 2. Defendants seek to avoid the necessity of this analysis by distinguishing this case from the cited precedent. They argue that both *Beacon* and *Dairy Queen* involve determinations of the equitable claims by the court prior to the jury trial. Here, they note, the Special Master is not making a judicial determination but rather is issuing a report of findings and recommendations. Under Federal Rule of Civil Procedure 53(e), these reports can be submitted to either the court for *de novo* review or the jury as evidence pertaining to the claims. Therefore, they conclude the trial of and report on all equitable claims by the Special Master presents no infringement of Refac's Seventh Amendment right. *See, e.g., In re Peterson,* 253 U.S. 300, 314 (1920) ("A compulsory reference with

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V          8

Intellectual Property Library        ISSN 1526-8535

power to determine issues is impossible in the federal courts because of the Seventh Amendment, ... but no reason exists why a compulsory reference to an auditor to simplify and clarify the issues and to make tentative findings may not be made at law, when occasion arises, as freely as compulsory reference to special masters are made in equity.").

While this Court appreciates the tidy, technical distinction defendants draw, I believe it rests on an unduly narrow interpretation of my Order of Reference. Although the Order refers explicitly only to the authority of the Special Master to try and report on all equitable claims, its implication is that, barring a conflict such as the one Refac claims here, I will proceed to review the reports and decide these claims prior to a jury trial. *See* Order of Reference Paragraph D, *see also* Federal Rule of Civil Procedure 42 (b) ("The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial ... of any number of claims, [or] issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States."). I construe Refac's objections as encompassing this implication and, therefore, find that Refac's motion is not premature. Defendants also argue that under Federal Rule of Civil Procedure 53, this Court could refer all claims, legal and equitable, to the Special Master. A Seventh Amendment conflict would not be triggered because under Rule 53(e), the Special Master may submit his reports to the judge for final determination or to the jury as evidence, depending on the type of issue involved. While this Court notes the possibilities defendants raise, an expansion of my Order of Reference seems premature at this time.

Footnote 3. Refac does not object to the Special Master trying the defense of inequitable conduct. *See Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1200, 1211-13 [ 2 USPQ2d 2015 ] (Fed. Cir. 1987) (holding that the defense of inequitable conduct may properly be tried prior to a jury trial on the legal issues.)

Footnote 4. The doctrine of equivalents is limited in several respects. It will not extend to cover an accused device which is part of prior art. Nor will it encompass claim coverage specifically given up during prosecution. *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 870 [ 228 USPQ 90 ] (Fed. Cir. 1985).

Footnote 5. Defendants contest the standing of Refac to bring this suit, claiming that Refac's contract with Jerome H. Lemelson which provides Refac with the right to sue is champertous and, thus, void. All the parties contend that New York law governs the issue of champerty because the Refac/Lemelson contract contains a New York choice of law provision. However, the parties neglect to provide the reasoning behind this conclusion. If this were a diversity case or pendant jurisdiction claim, the reasoning would be relatively straightforward. Pursuant to either *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 726 (1966) (pendant jurisdiction) or *Klaxton v. Stentor Elec. Mfg.,* 313 U.S. 487 [ 49 USPQ 515 ] (1941) (diversity action), the law of the forum state in which the district court sits would apply. Barring proof of fraud and the like, New Jersey courts enforce such choice of law provisions. *See, e.g., Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc.,* 196 N.J.Super. 16, 20 (App. Div. 1984), *aff'd,* 98 N.J. 266 (1985). Unfortunately, this is not a diversity case or pendant jurisdiction claim. It is a case involving patent law which is within the peculiar province of the federal courts. Thus, contesting the standing of a party to enforce its patent law rights must be federal defense determined by federal law. As a result, resolution of the federal issue of standing depends on whether federal law would enforce the choice of law provision Refac and Lemelson included in their contract. Although I could find no patent cases directly on point, the Supreme Court has held in analogous contexts that absent a showing of unreasonableness, unfairness, or unjustness, contractual choice of law provisions should be enforced. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506 (1973); *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972). To hold parties to common intent also would be the equitable solution.

The New York champerty statute applicable in this case provides in pertinent part:

"No person or co-partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy, or take an assignment of, or be in any manner interested in buying or taking an assignment of a

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V          9

Intellectual Property Library        ISSN 1526-8535

bond, promissory note, bill or exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon; provided however, that bills receivable, notes receivable, bills of exchange, judgments or other things in action may be solicited, bought, or assignment thereof taken, from any executor, administrator, assignee for the benefit of creditors, trustee or receiver in bankruptcy, or any other person or persons in charge of the administration, settlement or compromise of any estate, through court actions, proceedings or otherwise."
N.Y.Jud. Law Section 489 (McKinney 1978).

Footnote 6. Because the factual issue of patentee's knowledge is different from the issue of the alleged infringer's notice, Refac's reliance on *Shapiro & Aronson v. Franklin Brass Foundry*, 272 F. 176 (E.D. Pa. 1921), is misplaced. In *Shapiro,* the court disapproved of referring the issue of the alleged infringer's notice to a special master. Since that is not what is referred here, the case is irrelevant. Even if it wasn't irrelevant, its value as precedent is seriously undermined by the criticism it has received. *See, e.g., Bishop & Babcock Mfg. Co. v. Pulton Co.,* 37 F.2d 293, 295 (6th Cir. 1930).

Footnote 7. This issue is referred to as "extension of monopoly" in the Special Master's report. *See* Report at 3.

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V        10

Intellectual Property Library    ISSN 1526-8535

Copyright 2006, The Bureau of National Affairs, Inc. Reproduction or redistribution, in whole or in part, and in any form, without express written permission, is prohibited except as permitted by the BNA Copyright Policy.
http://www.bna.com/corp/index.html#V    11